[No. S101633. Jan. 30, 2003.]

ALTA KAVANAUGH, Plaintiff and Respondent, v.
WEST SONOMA COUNTY UNION HIGH SCHOOL DISTRICT et al.,
Defendants and Appellants.

---

**COUNSEL**

Robert J. Henry and Nancy L. Klein for Defendants and Appellants.

James David Allen for Plaintiff and Respondent.

---

**OPINION**

**WERDEGAR, J.**—We address in this case the proper interpretation of Education Code section 44916,[1] which requires an employing school district to provide new certificated employees with written notice of their employment status "[a]t the time of initial employment." If a district fails to provide such notice, or if the notice fails to indicate employment is "temporary," section 44916 prescribes a statutory remedy: "[T]he certificated employee shall be deemed to be a probationary employee," an employment classification entitling the employee to greater job protections.

Plaintiff Alta Kavanaugh, a certificated teacher, did not receive written notice of her status as a temporary employee until she had been working in the classroom more than two weeks. Although the trial court held such notice came too late and concluded Kavanaugh must be considered a probationary employee by operation of section 44916, the Court of Appeal reversed. We conclude the trial court was correct and reverse the judgment of the appellate court.

## FACTS

Defendant West Sonoma County Union High School District (the District) had an opening for a high school English teacher for the 1999-2000 school year. The District's personnel manager, Susan Panas, declared she prepared an announcement for the position that explained the opening was for a

---

[1] All statutory references are to the Education Code unless otherwise stated.

temporary position.[2] Kavanaugh, a teacher with many years of teaching experience in other districts, applied for the position and stated in her declaration that she was not told whether it was temporary or probationary. On August 20, 1999, principal Thomas Lorch interviewed Kavanaugh and offered her the position. Kavanaugh asserts that when she asked Lorch whether the position was "only a one-year position," he replied that she would have to work two years as a probationary teacher before being eligible to become a permanent teacher. At no time, she declares, did Lorch inform her the position was only temporary, and she further declares that she would not have taken a temporary position because she had a permanent position at her former school.

By contrast, Lorch declares he never told Kavanaugh her position would lead to a permanent one, and he denies discussing the tenure procedure with her. Although he declares, "I always tell the candidates for temporary positions that the employment is a temporary one-year contract," he does not state he told Kavanaugh she was interviewing for, and being hired for, a temporary position.

Kavanaugh began working on August 26, 1999. On September 9, 1999, the Board of Trustees for the District met and ratified Kavanaugh's hiring as a high school English teacher at Analy High School "effective 8-26-99." The board's action was confirmed by a letter Panas sent to Kavanaugh dated September 13, 1999. The letter stated: "At the Board Meeting on September 9, 1999[,] the Board of Education approved your employment as a *temporary* teacher at Analy High School effective August 26, 1999." (Italics added.) Kavanaugh admits receiving the letter and states in her declaration that this was the first time she had any notice she had been hired as a temporary, rather than a probationary, teacher.

By October 18, 1999, Panas had verified Kavanaugh's prior academic and employment history so as to establish her proper place on the salary schedule. At that time, she notified Kavanaugh to come to the District office to sign her contract. Kavanaugh did so on November 9, 1999, at which time she asked Panas why her contract provided that she was only a temporary employee after principal Lorch had told her she would be classified as a probationary employee. Kavanaugh asserts that Panas told her: "That's just something this district does. Don't worry. If you get a good evaluation, they'll retroactively make you probationary." Panas specifically denies these allegations in her own declaration.

---

[2]The District apparently did not produce a copy of the announcement in the trial court for verification.

The parties agree that, near the end of the school year, the District was experiencing a financial crisis and, on April 20, 2000, elected not to reemploy several certificated employees, including Kavanaugh. Kavanaugh received written notice of this decision by a letter of that date. She filed a petition for a writ of mandate in Sonoma County Superior Court, alleging that the District had a duty to classify her pursuant to section 44916 as a probationary employee because it had failed to provide her with timely written notice that she was only a temporary employee. Moreover, she claimed the District had a further duty to reemploy her for the coming school year because it did not notify her by March 15, 2000, that she was being laid off. The trial court granted her petition; the Court of Appeal reversed.

## DISCUSSION

### A.

Plaintiff Kavanaugh sought a writ of mandate from the trial court. A writ of mandate "may be issued by any court . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ." (Code Civ. Proc., § 1085, subd. (a).) To be entitled to relief, Kavanaugh must show the District has a clear, present and ministerial duty to reelect (rehire) her and that she has a clear, present and beneficial right to performance of that duty entitling her to a writ of mandate. (*Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 539-540 [28 Cal.Rptr.2d 617, 869 P.2d 1142].) "A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists." (*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 501 [2 Cal.Rptr.2d 50].) Whether the District had a clear, present and ministerial duty to reelect plaintiff Kavanaugh depends on the meaning of section 44916. Although an appellate court defers to a trial court's factual determinations if supported by substantial evidence (*Kreeft v. City of Oakland* (1998) 68 Cal.App.4th 46, 53 [80 Cal.Rptr.2d 137]), in this case the trial court's decision did not turn on any disputed facts. Accordingly, the trial court's legal interpretation of section 44916 is subject to de novo review. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

### B.

"The Education Code establishes four possible classifications for certificated employees: permanent, probationary, substitute and temporary." (*Taylor v. Board of Trustees* (1984) 36 Cal.3d 500, 504 [204 Cal.Rptr. 711, 683

P.2d 710].) The code authorizes the governing boards of school districts to hire, classify, promote and dismiss certificated employees (i.e., teachers) (see § 44831), but establishes a complex and somewhat rigid scheme to govern a board's exercise of its decisionmaking power. The date on which a certificated employee is first classified within one of these four employment categories is often critical, for such status has ramifications for both the teacher and the district throughout the employment relationship. For example, if a certificated probationary employee works for two complete consecutive school years and is then reelected for the next succeeding year, the employee is deemed elevated to permanent status by operation of law. (§ 44929.21, subd. (b).)[3] In some circumstances, a probationary employee who is not informed of his or her nonreelection by March 15th of the current school year is deemed reelected for the following school year. (§§ 44929.21, subd. (b), 44955, subd. (c).) If a certificated employee works as a temporary employee for a complete school year and is then "reemployed for the following school year in a position requiring certification qualifications, [he or she must] be classified by the governing board as a probationary employee and the previous year's employment as a temporary employee shall be deemed one year's employment as a probationary employee for purposes of acquiring permanent status." (§ 44917; see also § 44920.)

A certificated teacher's classification also governs the level of statutory job protection the teacher enjoys and controls the level of procedural protections that apply if he or she is not reelected. In general, permanent employees may not be dismissed unless one or more statutorily enumerated grounds are shown. (§ 44932.) Probationary employees may not be dismissed during the school year except for cause or unsatisfactory performance (§ 44948.3), but, on timely notice, "may be nonreelected without any showing of cause, without any statement of reasons, and without any right of appeal or administrative redress." (*Bellflower Education Assn. v. Bellflower Unified School Dist.* (1991) 228 Cal.App.3d 805, 808 [279 Cal.Rptr. 179].)[4] "Substitute and temporary employees, on the other hand, fill the short range needs of a school district and generally may be summarily released." (*Taylor v. Board of Trustees, supra,* 36 Cal.3d at p. 505.) Thus, temporary teachers

---

[3]This rule applies to school districts with an average daily attendance of 250 or more and to probationary employees whose probationary period commenced during or after the 1983-1984 fiscal year. (§ 44929.21, subd. (b).)

[4]A school district may choose not to reelect a probationary employee "without providing cause or other procedural protections to the terminated employees" (*Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 281 [52 Cal.Rptr.2d 115, 914 P.2d 193]), but if nonreelection is for economic reasons (such as a decline in daily attendance or discontinuance of services), the teacher is entitled to certain procedural protections pursuant to section 44949. (See *Cousins v. Weaverville Elementary School Dist.* (1994) 24 Cal.App.4th 1846, 1854 [30 Cal.Rptr.2d 310].)

may be dismissed "[a]t the pleasure of the [governing] board prior to serving during one school year at least 75 percent of the number of days the regular schools of the district are maintained" (§ 44954, subd. (a)), and after that time so long as the temporary employee is notified before the end of the school year (*id.*, subd. (b)). The overall scheme the Legislature has created in the Education Code is thus specific as to the rights and responsibilities of certificated teachers and their employers, the governing boards.

The dispute in this case arises from the heightened job protection the Education Code provides for certificated teachers classified as probationary employees of a school district versus teachers classified as merely temporary employees. If Kavanaugh is considered a *probationary* employee, the District was obligated to retain her for the following year because it failed to notify her by March 15th of the school year that it was considering not doing so for economic reasons. (§§ 44949, subd. (a), 44955, subds. (a), (c).) Alternatively, if Kavanaugh is considered a *temporary* employee, the District was legally entitled to dismiss her because it notified her of her dismissal "before the end of the school year." (§ 44954, subd. (b).)

Kavanaugh's status turns on the proper interpretation of section 44916. That section provides: "The classification [of a certificated employee] shall be made at the time of employment and thereafter in the month of July of each school year. *At the time of initial employment during each academic year, each new certificated employee of the school district shall receive a written statement indicating his employment status and the salary that he is to be paid.* If a school district hires a certificated person as a temporary employee, the written statement shall clearly indicate the temporary nature of the employment and the length of time for which the person is being employed. *If a written statement does not indicate the temporary nature of the employment, the certificated employee shall be deemed to be a probationary employee of the school district, unless employed with permanent status.*" (Italics added.)

Section 44916 thus mandates that a school district comply with three requirements if it desires to hire a "new certificated employee" (such as plaintiff Kavanaugh) as a temporary employee: it must (a) notify the employee of his or her salary and status as a temporary employee; (b) do so in a written notice; and (c) give such notice "[a]t the time of initial employment." Although the District's September 13th letter constituted written notice to Kavanaugh of her employment status, thereby satisfying the first two requirements of section 44916, Kavanaugh argues that notice came too late to satisfy the third requirement, because the phrase "at the time of initial

employment" means "at the time she *began her work* for her employer" (see Webster's 3d New Internat. Dict. (2002) p. 743, col. 3 [definition 2 a of "employment" includes "work . . . in which one's labor or services are paid for by an employer"]) and thus refers to August 26, 1999, her first day of paid service to the District. By contrast, the District argues the phrase "at the time of initial employment" means "at the time *she was hired*" (see *ibid.* [definition 3 a of "employment" includes "the act of employing someone"]), and refers to the moment in time that Kavanaugh's hiring was ratified by the Board of Trustees for the District, or September 9, 1999. Under the District's interpretation, the September 13th letter was sufficiently timely to avoid the statutory consequences prescribed by the last sentence of section 44916, namely, automatic classification as a probationary employee, with all the procedural protections attendant to such employment status.

 We begin our discussion with the oft-repeated rule that when interpreting a statute we must discover the intent of the Legislature to give effect to its purpose, being careful to give the statute's words their plain, commonsense meaning. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632-633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) If the language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary. (*County of Santa Clara v. Perry* (1998) 18 Cal.4th 435, 442 [75 Cal.Rptr.2d 738, 956 P.2d 1191].) Here, however, both interpretations are equally plausible, commonsense readings of the statutory language; hence, we cannot resolve the issue through resort to the plain meaning rule, but must look elsewhere for guidance.

 We often rely on the canons of statutory construction to assist us in discerning the correct interpretation of statutory language. Thus, we have explained that a statute should be interpreted " 'with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' " (*Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Looking to the whole system of law related to employees in the Education Code, we find the Legislature knows how to specify the first day of paid service when it desires to designate that day as having legal consequences. For example, section 44845 provides that all permanent or probationary certificated employees (employed after June 30, 1947) "shall be deemed to have been employed on *the date upon which he [or she] first rendered paid service* in a probationary position." (Italics added.) From this, we might conclude that section 44916's failure to so specify is fatal to Kavanaugh's claim. (See *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 999 [73 Cal.Rptr.2d 682, 953 P.2d 858].)

But the rules of statutory construction are merely aids and sometimes can be used to reach opposite results. This is such a case, for when the Legislature intends to attach legal significance to the time an employee was hired, it has explicitly said that as well.[5] We conclude the Legislature has not been consistent in this regard, and that we may draw no firm conclusions from its failure to specify either the first day of paid service or the date of hiring as the relevant time for triggering section 44916's remedy.

In order to ascertain a statute's most reasonable meaning, we often examine its legislative history. (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 579 [110 Cal.Rptr.2d 809, 28 P.3d 860].) In this case, however, the available legislative history does not illuminate the true meaning of section 44916. None of the available materials considered by the Legislature discuss the difference between the time a teacher is officially hired and the time she first reports to work. ██ ▬██ ██ Indeed, with one minor exception,[6] no document in the legislative history even refers to "hiring."

We turn finally to a consideration of the Legislature's apparent purpose in enacting section 44916. Reading the section as a whole (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743 [110 Cal.Rptr.2d 828, 28 P.3d 876]), it is plain that it addresses *the time* at which certificated employees must be classified. Thus, it provides that continuing employees, i.e., permanent employees and probationary employees who have been reelected from the previous year, must be classified "in the month of July of each school year." (§ 44916.) "[E]ach new certificated employee," however, must be informed in writing of his or her classification "[a]t the time of initial employment during each academic year." (*Ibid.*)

---

[5]See, e.g., section 44830, subdivision (h) ("If the basic skills proficiency test is not administered *at the time of hiring*, the holder of a vocational designated subject credential who has not already taken and passed the basic skills proficiency test may be hired on the condition that he or she will take the test at its next local administration" (italics added)); section 44830.2, subdivision (f)(3) (fingerprint and criminal history evidence "shall be destroyed *upon the hiring determination* in accordance with [relevant regulations]" (italics added)); section 87102, subdivision (b) ("The governing board of each community college district shall publish and distribute a record of the success rate of measurable progress, with respect to its goals and timetables, *in hiring employees* through its affirmative action employment program" (italics added)).

[6]The legislative history of section 44916 includes a September 4, 1974, letter from State Senator Arlen Gregorio, the author of the bill that became section 44916 (Sen. Bill No. 1942 (1973-1974 Reg. Sess.)), to then Governor Ronald Reagan, stating that the proposed law "would require school districts to notify new employees of their employment status *at the time of hiring.*" (Italics added.) Needless to say, since it was not at issue, the letter does not discuss the difference between the time of hiring and the time a teacher begins work. Moreover, " '[i]n construing a statute we do not consider the objective of an authoring legislator when there is no reliable indication that the Legislature as a whole was aware of that objective and believed the language of the proposal would accomplish it.' " (*People v. Johnson* (2002) 28 Cal.4th 240, 247 [121 Cal.Rptr.2d 197, 47 P.3d 1064].)

As we have seen, the time of classification is important in determining a teacher's rights to reelection and promotion, if any, and to determining the level of procedural protections to which a teacher is entitled should he or she be dismissed or nonreelected. Because section 44916 places the burden on the governing boards of school districts to inform teachers of their classification and salary, and enforces this burden with a default classification that benefits teachers, we conclude the Legislature's intent and purpose in enacting section 44916 was to benefit teachers. Stated differently, section 44916 reveals the Legislature's intent that certificated teachers be informed of their classification at a time that is sufficiently early in the process to enable them to make informed decisions regarding their future employment. For teachers employed by the district in the preceding school year, that time is in July, well before the start of the next school year. A school district's need for new employees, however, may not be apparent until sometime closer to the beginning of the school year, or even after the school year has begun. Informing those new employees of their classification "[a]t the time of [their] initial employment" (*ibid.*), that is, before they first render paid service to their employer, reconciles the District's need to make late hires with the Legislature's apparent intent that teachers receive as early as possible the information necessary to make an informed decision about their employment future.[7]

Reading section 44916 to mean that certificated teachers must be informed in writing, on or before their first day of paid service to their employing districts, of their salary and employment status is thus consistent with the apparent purpose of the statute. Once a school year begins, for teachers to find a job as other than a substitute is much more difficult. A requirement that employing districts inform applicants for certificated positions of their proposed employment status (permanent, probationary, temporary, substitute) before they actually begin working avoids the kind of bait-and-switch scenario in which a teacher begins the school year believing his or her status is probationary (with the accompanying level of job protection) only to

---

[7]Notification as late as a teacher's first day of paid service to the district may well be too late for the teacher to secure a different job, but of course this represents *the last day* the governing board can comply with section 44916 to avoid the automatic reclassification provided for in the statute. Nothing forbids a district from giving earlier notice. Nevertheless, that a governing board is obligated to inform teachers of their employment status by the first day of paid employment, and is not permitted to delay notice while it formalizes that employment, at least makes it more likely that teachers will be told in a fashion that will be timely for purposes of considering other employment. The Legislature may well have believed that an earlier date, such as notice at the time teachers are offered the position (as opposed to formally hired), may place too much pressure on school districts to commit themselves too soon. Section 44916 may thus be viewed as a balancing of the interests of teachers and school districts.

discover after the year has started—when it is too late to find another position—that the position is only temporary. Indeed, although the factual disputes inherent in this case were not resolved below, if Kavanaugh's declaration were to be believed, that is exactly what happened here. In any event, regardless of the reason for its delay, had the District provided notice as required by section 44916, that is to say on or before Kavanaugh's first day of paid service to the District, this litigation could have been avoided.

This interpretation of section 44916 is also consistent with the sole legal authority in this area. In *California Teachers Assn. v. Governing Board* (1987) 195 Cal.App.3d 285 [240 Cal.Rptr. 549] (*Governing Board*), a certificated teacher named Grelling was employed as a temporary employee for the second half of the 1981-1982 school year. He was rehired for the next school year and worked that entire year. On March 17, 1983, he asked why he had not received a written employment contract for the year. The district then presented him with a "Contract of Temporary Employment," backdated to September 9, 1982. He declined to sign the contract on advice of his teachers association, which advised him he was a probationary employee, not a temporary one. Although reminded by a letter from the superintendent to report for work on the first day of the 1983-1984 school year, he was told upon arriving that he had no job. (*Id.* at p. 290.)

The Court of Appeal did not resolve whether Grelling should be considered a returning teacher or one newly hired for the 1982-1983 school year, deciding that, in either case, he did not receive the written notice required by section 44916 and thus must be considered a probationary employee by operation of law. "[H]e did not receive a written statement concerning his classification as a temporary employee in July 1982 [i.e., as would have been required for a continuing teacher], *or when he began teaching at the beginning of the 1982-1983 school year [as would have been required for a newly hired teacher]*." (*Governing Board, supra,* 195 Cal.App.3d at p. 293, italics added.) "By providing no written statement of the temporary nature of employment *at the beginning of employment for the 1982-1983 school year,* respondent district's noncompliance triggered the statutory remedy: 'the certificated employee shall be deemed to be a probationary employee of the school district. . . .' (Ed. Code, § 44916.)" (*Ibid.,* italics added.) The Court of Appeal in *Governing Board* clearly considered the phrase "at the time of initial employment," as used in section 44916, to refer to the time the teacher began working for the district and not months later, in March, when the district finally decided to formalize his hiring by asking him to sign a written contract of employment backdated to the beginning of the school year.

Like the facts in the instant case, those of *Governing Board, supra,* 195 Cal.App.3d 285, demonstrate the protection section 44916 is intended to

afford teachers. In both cases, the teachers had already begun teaching a class when the employing school district declared their status to be that of a temporary employee. Because such notice came too late for the teachers readily to secure another teaching position for that school year, they were pressured to accede to what they considered a midyear reclassification to their detriment. By requiring written notice of a teacher's classification on or before the first day of paid service, section 44916 is intended to prevent such pressure on teachers and ensure they are provided with necessary information about their employment status before they begin work.

By contrast, were we to accept the District's proffered interpretation of section 44916, governing boards of school districts would be permitted to provide written notice of a teacher's classification and salary level at some indeterminate future time, when it was convenient for the governing board to meet, possibly well after the teacher had rendered paid service and long after the information could be of practical use to him or her. This interpretation, accepted by both dissenting opinions, fails to explain what Kavanaugh's employment status was during the two weeks she taught classes but had not received written notice of her status. Absent from both opinions, moreover, is any explanation of how long a teacher must wait for the governing board to meet and formally hire the teacher so that he or she, as the dissenters would have it, might be given written notice of employment status, notwithstanding that the Legislature considered notice of classification of such importance as to enact section 44916 expressly addressing the issue.[8] Finally, neither dissenting opinion explains how their interpretation is consistent with the apparent purpose of section 44916, or how receiving such written notice weeks (as here) or months (as in *Governing Board, supra,* 195 CalApp.3d 285) after beginning work nevertheless provides teachers with the valuable information the Legislature intended they have, at a time when that information still has some value to the teacher. Because section 44916 was written to place the burden of notification on school districts and to benefit certificated teachers, no reason appears to interpret that section to give school districts greater flexibility in hiring at the expense of teachers.[9]

The District argues that accepting Kavanaugh's interpretation would violate the familiar canon of statutory construction that "courts must avoid

---

[8] At oral argument, counsel for the District admitted that the six months of delay in *Governing Board, supra,* 195 Cal.App.3d 285, violated section 44916, but that some delay short of that (such as what occurred in this case) would be permissible under the statute. Moreover, he opined that a governing board must act with "reasonable diligence" in providing the written notice under section 44916, and a long delay in complying with the statute would result in a buildup of the "equities" in the teacher's favor entitling her to relief. This interpretive gloss on section 44916, which adds additional terms to the statute, finds no basis in the words of section 44916.

[9] Contrary to Justice Chin's dissenting opinion, in reaching our conclusion this court is not engaging in "micromanagement" of school districts (dis. opn. of Chin, J., *post,* at pp. 926,

statutory constructions that lead to illogical or absurd results." (*Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 142 [65 Cal.Rptr.2d 580, 939 P.2d 1280].) ▮▮▮▮ The District contends this is so because: (a) a school district must sometimes hire a temporary teacher on short notice; (b) certificated employees can be employed only by a formal vote of a school district's governing board (*Barnhardt v. Gray* (1936) 15 Cal.App.2d 307, 310 [59 P.2d 454] ["In order legally to employ a teacher there must be what the law terms a regular or special meeting of the board of school trustees"]; see also § 35163);[10] (c) governing boards are "legislative bodies" subject to the Ralph M. Brown Act (Gov. Code, § 54950 et seq.),[11] which requires an agenda to be posted at least 72 hours before a regular meeting and at least 24 hours before a special meeting (Gov. Code, §§ 54954.2, subd. (a), 54956); and (d) "[s]etting aside practical and logistical concerns, school district governing boards simply cannot call a meeting before every new employee sets foot in a school to render paid service."

The alleged absurdity the District describes hinges on no other option being available for a district to address the problem of the emergency hire. But the logistical problem of having to convene a school board meeting every time a teacher must be hired can be solved by having the board delegate the hiring power to school principals or other appropriate employees to address such emergencies. (See § 35161 ["The governing board of any school district may . . . delegate to an officer or employee of the district any

---

927). We simply are giving effect to the evident intent of the Legislature in enacting section 44916. Nor does our opinion place public schools in a "bureaucratic strait jacket." One can assume that in the usual case a school district knows of its need for new teachers and selects the teachers a reasonable time before the school year starts; thus, a governing board that prefers not to delegate the classification of new teachers to the principal of a school (or to hire a teacher provisionally as a temporary employee, as we suggest elsewhere in this opinion), need only schedule a board meeting in advance of the first day of school. If need for a new teacher arises unexpectedly during the school year, the board can either delegate the hiring to the principal, as we discuss hereafter, or employ a substitute pending its next regularly scheduled meeting.

[10]Section 35163 states: "Every official action taken by the governing board of every school district shall be affirmed by a formal vote of the members of the board, and the governing board of every school district shall keep minutes of its meetings, and shall maintain a journal of its proceedings in which shall be recorded every official act taken."

[11]"[A] school board of a school district constitutes a 'legislative body' of a 'local agency.' ([Gov. Code,] §§ 54951, 54952.) Thus [a school board] is subject to the requirements of the Brown Act, and must conduct its meetings in open sessions unless a statutory exception authorizes a closed or executive session." (*Fischer v. Los Angeles Unified School Dist.* (1999) 70 Cal.App.4th 87, 95 [82 Cal.Rptr.2d 452].)

of those powers or duties" assigned by law to the district].)[12] And the District had a second option: It could have notified Kavanaugh before March 15th of the school year that she might not be reelected, thereby protecting itself from the statutory job protections given probationary employees who are notified of their nonreelection after that date. Because the District had these options, we reject its claim that—to avoid absurd results—section 44916 must be interpreted to mean that Kavanaugh was not actually employed until September 9th (the day the board ratified her hiring), despite the fact she had worked for the District for more than two weeks.

The District also argues that Kavanaugh's interpretation would lead to absurd results in another way: It contends that governing boards must verify a new employee's employment and educational history before finalizing his or her employment status and salary level. "Consequently, if the phrase 'at the time of initial employment' were interpreted to mean the first date of paid service, governing boards would be deprived of their statutory authority to classify new certificated employees in every instance where former employers or post-graduate institutions failed to respond promptly to a hiring district's requests."

The District overstates its case. To begin with, the concern about classifying new employees applies only to probationary employees, for temporary employees can be dismissed at any time; accordingly, they may be dismissed immediately upon discovery that their claimed educational accomplishments were inflated or their references falsified. Moreover, although it is true that a delay by former employers or colleges and universities may hamper a governing board's ability to classify a teacher before he or she actually begins working, a district can simply give the new employee—on or before his or her first day of paid service—written notice that the position is a temporary one pending confirmation by the school board and verification of the teacher's educational and employment references, at which point the teacher can be reclassified as probationary. In addition, a district can give the teacher written notice that he or she is temporary and then reelect the teacher for the following year, at which point his or her year as a temporary employee would be deemed a year as a probationary employee. (See § 44917.)

The District's final argument also fails to persuade. The District argues that interpreting section 44916 to require written notice on or before a

---

[12]The Court of Appeal recognized this possibility but dismissed it, concluding "there is nothing in this record that the District's board ever took action to delegate its power to employ temporary teachers." That the District may not have delegated the hiring function to principal Lorch is beside the point; it is the possibility of such delegation that undercuts the District's argument that Kavanaugh's proposed interpretation of section 44916 is absurdly unworkable within the parameters of the statutory scheme.

teacher's first day of paid service "would upset the intended statutory balance between temporary teachers and teachers absent due to long-term illness or leave." The District rightly states that the statutory scheme is intended to allow districts to maintain a balance between temporary teachers on the one hand, and probationary and permanent teachers on the other. The scheme, which generally permits temporary teachers to be laid off for no reason (§ 44954), gives school districts the flexibility to serve the number of pupils enrolled while preserving for permanent teachers absent on leave for illness or other reasons a position to return to. According to the District, Kavanaugh's interpretation of section 44916 would "upset that balance and result in the classification of more teachers in probationary status than a school district has vacancies." But this would be true only if a school district failed to provide written notice of a teacher's temporary status on or before the first day of paid service to the district. A district providing such notice can escape the statutory remedy set forth in section 44916 and ensure no temporary teacher is elevated to probationary status by operation of law.

## CONCLUSION

We conclude plaintiff Kavanaugh was not given written notice of her status as a temporary employee "[a]t the time of [her] initial employment," because she did not receive such notice on or before her first day of paid service. Accordingly, pursuant to section 44916, she must be considered a probationary employee as a matter of law. Because the District did not provide her with statutorily required notice before March 15th, the District had a clear, present and ministerial duty to reelect her for the following school year, and she has a clear, present and beneficial right to performance of that duty, entitling her to a writ of mandate. (*Santa Clara County Counsel Attys. Assn. v. Woodside, supra,* 7 Cal.4th at pp. 539-540.) We therefore reverse the decision of the Court of Appeal and remand the case to that court with directions to affirm the trial court's decision to issue a writ of mandate.

George, C. J., Kennard, J., and Moreno, J., concurred.

**CHIN, J.,** Dissenting.—I join in Justice Brown's dissenting opinion. I write separately to explain further my reasons for my dissent. In my view, the majority misinterprets Education Code section 44916[1] and oversteps its authority by micromanaging school districts.

Justice Brown correctly notes that, under section 44916, " 'the time of initial employment' " has the same meaning as "the time the school district

---

[1]All further statutory references are to the Education Code.

'hires' the new teacher." (Dis. opn. of Brown, J., *post*, at pp. 929, 931.) The majority does not dispute that the West Sonoma County Union High School District's (the District) governing board has the statutory authority to hire, employ, and classify its employees (maj. opn., *ante*, at p. 917) or that the written notice is necessarily given after the school district hires and employs the employee.[2] Impliedly recognizing that written notice cannot precede "the time of initial employment" or the time the school district hires the new teacher, the majority holds that a school district's governing board *must* give written notification of salary and employment status to certificated teachers on or before their first day of paid service. (Maj. opn., *ante*, at p. 921 and fn. 7.) "Notification as late as a teacher's first day of paid service to the district . . . represents *the last day* the governing board can comply with section 44916 to avoid the automatic reclassification provided for in the statute." (*Id.* at p. 921, fn. 7.) To satisfy section 44916, a school district's governing board must now convene and formally "hire" its employees before the first day of paid service or delegate its hiring power.

The majority recognizes that its holding is unsupported by either the statute's language or its legislative history. Instead, it cites the statute's purpose to benefit teachers by requiring timely written notice of employment terms. (Maj. opn., *ante*, at pp. 920-921.) I agree that teachers should receive timely notice of their employment terms, and that it is good practice for any employer to give written notice of employment status before an employee actually begins work. However, obvious, and major, practical problems exist in convening a school board meeting before *every* new employee begins actual work, especially when a teacher must be called in on short notice. The unexpected often occurs in public education. Often, for example, a teacher must be hired to start teaching quickly, perhaps next Monday, to fill an immediate and unexpected need. The majority is now telling the school district—without support from either the statutory language or its history—that it may not allow that teacher to start immediately without risking a reclassification that the school board may find inappropriate in light of the district's needs as a whole. This court should not engage in this sort of micromanagement. It should not squeeze public schools into a bureaucratic straitjacket that may prevent them from meeting the needs of their students.

The Legislature used the general term "[a]t the time of initial employment" to afford school districts flexibility in deciding how and when it

---

[2]Section 44916 states, in part, that "If a school district hires a certificated person as a temporary employee, the written statement shall clearly indicate the temporary nature of the employment and the length of time for which the person is being employed." The latter clause is clearly dependent on the former clause.

employs teachers to meet both its routine and unexpected needs. In meeting students' needs, we must not saddle school districts with inflexible bureaucratic mandates, especially ones that, as here, are judicially created.

Using this case as illustration, the majority reasons that written notice before a teacher actually begins work "avoids the kind of bait-and-switch scenario in which a teacher begins the school year believing his or her status is probationary (with the accompanying level of job protection) only to discover after the year has started—when it is too late to find another position—that the position is only temporary." (Maj. opn., *ante*, at pp. 921-922.) The majority declares that "had the District provided notice . . . on or before Kavanaugh's first day of paid service to the District, this litigation could have been avoided." (*Id.* at p. 922.) The record reflects otherwise.

It is undisputed that Kavanaugh received written notice of her employment status as a temporary teacher in a letter dated September 13, 1999, only two weeks after she began work. It is undisputed that Kavanaugh had left her previous teaching job for a teaching position in the District for the 1999-2000 school year. It appears undisputed that she taught in the District for most, if not all, of that school year. As a probationary teacher, Kavanaugh could have been nonreelected for the following year for economic reasons, provided the District notified her by March 15, 2000. (§§ 44949, subd. (a), 44955, subds. (a), (c).) As a temporary teacher, Kavanaugh could have been nonreelected for the following year for economic reasons, provided the District notified her "before the end of the school year." (§ 44954, subd. (b).) Thus, Kavanaugh would not have been automatically entitled to more than one school year of teaching in the District, whether employed as a probationary or a temporary teacher. Indeed, the record reflects that Kavanaugh only had taken a one-year leave of absence from her previous teaching job, thus indicating that she was not unequivocally relying on her new teaching job as more than a one-year position.

Kavanaugh's job classification matters in this case only because the *District* believed that Kavanaugh was a temporary employee. It accordingly gave notification of nonreelection on April 20, 2000, instead of on March 15, 2000, dates which occurred many months after Kavanaugh received her written notice. In giving notification of nonreelection on April 20th, the District reasonably relied on its September 13, 1999, letter that Kavanaugh's position was a temporary one. Thus, the timing of the written notice appears to be immaterial in this case. In finding that the written notice of job classification was untimely, and deeming Kavanaugh a probationary employee under section 44916, the majority places form over substance.

Kavanaugh received timely written notice within the meaning of section 44916. Accordingly, I respectfully dissent.

Baxter, J., concurred.

**BROWN, J.**—I respectfully dissent. Like the Court of Appeal in this case, I conclude Education Code[1] section 44916 "requires a school district to provide a written statement to a new certificated temporary employee indicating that person's employment status and salary when its governing board takes formal action to hire the employee, rather than on the date that new employee first renders paid service to the district."

Section 44916 should be read in conjunction with section 44915, which immediately precedes it. Section 44915 provides, "Governing boards of school districts shall classify as probationary employees, those persons employed in positions requiring certification qualifications for the school year, who have not been classified as permanent employees or as substitute employees." Section 44916 provides, "The classification shall be made at the time of employment and thereafter in the month of July of each school year. *At the time of initial employment* during each academic year, each new certificated employee of the school district shall receive a written statement indicating his employment status and the salary that he is to be paid. If a *school district hires* a certificated person as a temporary employee, the written statement shall clearly indicate the temporary nature of the employment and the length of time for which the person is being employed." (Italics added.)

Thus, section 44915 refers to the board classifying teachers, and section 44916 specifies when that classification by the board must be made. Moreover, section 44916 specifically refers to the "school district hir[ing]" a teacher. The majority does not dispute the Court of Appeal's assertion that under the Education Code, "the power to employ and classify certificated employees is vested exclusively in the governing board of a school district." (See §§ 44830, subd. (a), 44830.7, 44831, 44909, 44915, 44917, 44919, 44920.) If the governing board employs and classifies employees, it is difficult to understand how a teacher could "receive a written statement indicating his employment status and the salary that he is to be paid" prior to the board determining those matters. Or how a notice that must indicate the temporary status in which the teacher was "hire[d]" could issue before such "hir[ing]" occurs. It thus seems "the time of initial employment" means nothing different from and cannot precede the time the school district "hires" the new teacher. (§ 44916.)

---

[1] All statutory references are to this code.

Indeed, the legislative history of section 44916 indicates the Legislature repeatedly referred to the school district as the entity hiring and classifying teachers. (See, e.g., Sen. Republican Caucus, analysis of Sen. Bill No. 1942 (1973-1974 Reg. Sess.) June 5, 1974, p. 1 ["This bill . . . would require that *at the time of employment by a school district* each certificated employee would be furnished a written statement indicating the employee's classification, salary level, and a brief statement of specified employee rights" (italics added)]; Legis. Counsel's Dig., Sen. Bill No. 1942 (1973-1974 Reg. Sess.) as introduced Mar. 29, 1974 ["Requires that *at the time of employment by a school district,* each certificated employee be furnished a written statement indicating the employee's classification, salary level, and brief statement of specified employee rights" (italics added)]; Legis. Counsel's Dig., Sen. Bill No. 1942 (1973-1974 Reg. Sess.) 2 Stats. 1974, Summary Dig., p. 204 ["Requires that during each academic year *at the time of employment by a school district,* each certificated employee be furnished a written statement indicating the employee's classification and salary level" (italics added)].)

Moreover language similar to that in section 44916 appears in section 44830, subdivision (b). Section 44830, subdivision (b) provides: "[N]o school district governing board shall *initially hire* on a permanent, temporary, or substitute basis a certificated person seeking employment in the capacity designated in his or her credential unless that person has demonstrated basic skills proficiency . . . ." (Italics added.) If the board "initially hire[s]" teachers in section 44830, subdivision (b), it would seem consistent that it is the board's, not the school's, action to which section 44916 refers when it uses the language "initial employment" and "hires."

In addition, when the Legislature intends consequences to attach from the moment paid service is first rendered, it says so explicitly. For example, section 44845 provides, "[e]very probationary or permanent employee employed after June 30, 1947, shall be deemed to have been employed on the date upon which he *first rendered paid service* in a probationary position." (Italics added; see, e.g., § 44846 ["As between two or more employees who *first rendered paid service* to the district on the same date"]; § 44847; § 44848 ["When any certificated employee shall have resigned or been dismissed for cause and shall thereafter have been reemployed by the board, his date of employment shall be deemed to be the date on which he *first . . . rendered paid service* . . . after his reemployment" (italics added)].) No such language appears in section 44916.

The majority claims the absence of such language is inconclusive because in other statutes the Legislature uses the word "hiring," and thus "has not

been consistent in this regard." (Maj. opn., *ante*, at p. 920.) The Legislature obviously views these as different events, and is therefore not being inconsistent, but invoking different language to refer to different dates. Contrary to the majority's assertion, the Legislature did not fail to specify "the date of hiring as the relevant time for triggering section 44916's remedy." (*Ibid.*) Rather, as plaintiff asserted at oral argument, the terms "initial employment" and "hire[]" in section 44916 mean the same thing, and as plaintiff also conceded, it is the school district that is the hiring entity. Given that when an employee is "hir[ed]" is different from when the employee "first rendered paid service," this court should conclude in this case that "initial employment" in section 44916 means something different from the teacher's first day of paid service.

The majority relies in part on *California Teachers Assn. v. Governing Board* (1987) 195 Cal.App.3d 285 [240 Cal.Rptr. 549], stating the Court of Appeal in that case "clearly considered the phrase at 'the time of initial employment' . . . to refer to the time the teacher began working for the district, and not" the time the school board ratified his hiring several months later. (Maj. opn., *ante*, at p. 922.) As the plaintiff notes, however, "the teacher there was a returning teacher and the question of whether 'the initial time of employment' is the first day of paid employment was not before the court." Moreover, at least one case interpreting the identical language of former section 13335, the predecessor to section 44916, appears to assume notice of a temporary classification in the employment contract satisfies the statute's notice requirement. (*California Teachers Assn. v. Pasadena Unified Sch. Dis.* (1978) 79 Cal.App.3d 556, 560 [145 Cal.Rptr. 100] [citing former § 13335 and noting while the "actual employment contracts are not in the record, . . . it must be presumed in support of the judgment that appellants were duly notified of the nature of their employment at the time"].)

Thus, contrary to the majority's assertion that the statutory language and legislative history are inconclusive (maj. opn., *ante*, at pp. 919-920), these sources of information, together with the language of related statutes, consistently support the interpretation that "time of initial employment" is when the board hires the teacher, not when she begins work.

Rather than relying on such sources, the majority primarily focuses on the various results it asserts would ensue if we affirm or reverse the Court of Appeal. (Maj. opn., *ante*, at pp. 920-923.) These too fail to persuade, and indeed, it is the majority's result that implicates significant policy concerns. For example, the majority contends that interpreting "initial employment" to mean "before [a teacher] first render[s] paid service to [his or her] employer"

will enable the teacher to make an informed decision about his or her employment future as early as possible, and "avoids the kind of bait-and-switch scenario in which a teacher begins the school year believing his or her status is probationary (with the accompanying level of job protection) only to discover after the year has started—when it is too late to find another position—that the position is only temporary." (Maj. opn., *ante*, at pp. 920-921.)

To the contrary, the majority's suggestion new teachers always be told they are temporary when they start, but that this status may change after the board votes, does nothing to implement the clear notice and security that is the purpose of section 44916. Rather, it interprets the statute in a manner that provides less direction to teachers. Section 44916 requires a written statement of what a teacher's employment status and salary *will be*, not "written notice that the position is a temporary one pending confirmation by the school board and verification of the teacher's educational and employment references, at which point the teacher [could] be reclassified as probationary." (Maj. opn., *ante*, at p. 925.)

Moreover, as the majority also notes, a "school district's need for new employees . . . may not be apparent until sometime closer to the beginning of the school year, or even after the school year has begun." (Maj. opn., *ante*, at p. 921.) Here, plaintiff began work on August 26, and was informed on September 13 she was temporary. (*Id.* at p. 915.) Contrary to the majority's assertion, this was not "midyear" notification. (*Id.* at pp. 922-923.) Rather, it seems unlikely plaintiff's employment prospects for the current school year changed dramatically during such a brief time period.

In addition, the purpose of a governing board is to oversee the entire district, and make hiring and salary decisions for a particular school against the backdrop of the needs of the district's other schools. Requiring boards to delegate their hiring and classification authority, as the majority suggests, to each individual school will lead to a fragmented and fiscally chaotic personnel situation. (See maj. opn., *ante*, at pp. 924-925.) Moreover, it hardly seems appropriate for this court to state when such power should be delegated, or to impose nonsensical and counterproductive duties on school administrators.

Certainly the apparent purpose of section 44916 is to provide a new teacher prompt notice of her salary and classification. Given that the statute has existed for over a quarter of a century, however, and this is the first case to raise the issue of when the notice must be given, it does not appear school districts allow a teacher's employment status to remain in limbo for prolonged periods of time. Moreover, caution is appropriate because the narrow

question before us does not involve a comprehensive assessment of other limitations—in the Constitution, statutes, or collective bargaining agreements—that would prevent the board from allowing a teacher to work for an extended period of time without knowing her salary or status. In sum, no policy reason asserted by the majority justifies ignoring section 44916's language and the statutory scheme in which it exists.

I would affirm the judgment of the Court of Appeal.

Baxter, J., and Chin, J., concurred.

Appellants' petition for a rehearing was denied April 16, 2003, and the opinion was modified to read as printed above. Baxter, J., Chin, J., and Brown, J., were of the opinion that the petition should be granted.