[No. G040592. Fourth Dist., Div. Three. Jan. 7, 2009.]

RAUL HERNANDEZ SOLANO, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Marri Derby, Alternate Defender, and Antony C. Ufland, Deputy Alternate Defender, for Petitioner.

No appearance for Respondent.

Tony Rackauckas, District Attorney, David S. Kirkpatrick and Kevin Haskins, Deputy District Attorneys, for Real Party in Interest.

## Opinion

**FYBEL, J.—**

### Introduction

A felony complaint was filed directly in the criminal court against petitioner Raul Hernandez Solano, a minor, pursuant to Welfare and Institutions Code section 707, subdivision (d)(2). Following a preliminary hearing, the magistrate did not hold petitioner to answer for any crime that would permit direct filing in the criminal court under that section. The district attorney then filed an information charging the same crimes alleged in the complaint to challenge the magistrate's probable cause findings. Petitioner moved to dismiss the information. (Pen. Code, § 995.) The criminal court denied the motion to dismiss, and petitioner filed a petition for a writ of mandate and/or prohibition.

In this case of first impression, we hold that under Welfare and Institutions Code section 707, subdivision (d)(4), the prosecuting attorney may file an information challenging a magistrate's finding of lack of reasonable cause on a complaint filed in the criminal court before any transfer of the case to the juvenile court. We therefore deny the petition.

### Statement of Facts and Procedural History

On December 10, 2006, 15-year-old petitioner, Adriana Delmoro, Randy Garcia, and Jose Mendoza began an evening of gang-related vandalism, including tagging specific targets in Santa Ana. At approximately 1:00 a.m. on December 11, the group stopped in front of a house at the corner of 7th and Raitt Streets. D.C., who was inside the house, heard a car door slam. He looked through the front door window of the house and saw a silver- or metallic-colored Chevrolet Malibu with a female driver parked in front of the house. A passenger in the car was a male Hispanic, with a shaved head, whose upper torso stuck out of the backseat window. D.C. also saw another male standing in the driveway behind D.C.'s father's car.

D.C. turned on the porch light and opened the front door of the house. The male standing in the driveway moved toward the Chevrolet Malibu in the street; as he did, he turned around and pointed a handgun in D.C.'s direction. D.C. heard two gunshots and saw muzzle flashes. He then saw another male run from the other side of his house to the car in the street, and get in the driver's side rear seat. At field showups that evening, D.C. said petitioner resembled the person who ran from the side of his house after the

shots were fired, and identified Garcia as the shooter, Delmoro as the driver, and Mendoza as the person he had seen in the backseat of the car.

Petitioner and his three codefendants were soon stopped by the police. Mendoza made a statement after being advised of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]. He told the police officers that on December 10, Delmoro drove him to a liquor store where Mendoza purchased two cans of spray paint. Mendoza said he intended to go tagging for his gang. Later, Mendoza met with petitioner and Garcia, and Garcia called Delmoro to meet them. While waiting for Delmoro, Mendoza allowed petitioner and Garcia to handle a nine-millimeter Glock and a .45-caliber Glock he carried for "protection" while tagging. Mendoza stated either petitioner or Garcia had a .22-caliber handgun in his possession. When Delmoro arrived, the group discussed tagging different locations that night.

Delmoro drove the Chevrolet Malibu, and Garcia sat in the front passenger's seat; petitioner was sitting behind Delmoro, and Mendoza was sitting behind Garcia. Petitioner, Garcia, and Mendoza tagged "F-Troop" and Mendoza tagged his moniker at eight or nine locations. At the last location they tagged, a house at the corner of 7th and Raitt Streets, something went "wrong." According to Mendoza, after he tagged the side wall of the house and returned to the car, either Garcia or petitioner fired two shots.

D.C.'s house had been spray painted with F-Troop gang graffiti. One of the cars in the driveway of the house had also been spray painted with F-Troop gang graffiti, and had a bullet hole in the trunk. A single bullet casing was found on the driveway; no bullet hole was found on the exterior of the house. The investigating officer testified that both the car and the house would have been in the line of fire for a person shooting from where D.C. had described.

A felony complaint charged petitioner with willful, premeditated and deliberate attempted murder (Pen. Code, §§ 187, subd. (a), 664, subd. (a)); shooting at an inhabited dwelling (*id.*, § 246); street terrorism (*id.*, § 186.22, subd. (a)); conspiracy to commit vandalism (*id.*, §§ 182, subd. (a)(1), 594, subds. (a), (b)(1)); and possession of a firearm by a minor (*id.*, § 12101, subd. (a)(1)). The counts of attempted murder, conspiracy, and possession of a firearm by a minor were alleged to have been committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by members of the gang. (*Id.*, § 186.22, subd. (b).) The complaint stated it was filed directly in the

criminal court pursuant to Welfare and Institutions Code section 707, subdivision (d)(1) and (2).

At the outset of a preliminary examination, the prosecutor moved for the magistrate to dismiss the attempted murder count; the motion was granted. At the end of the hearing, the magistrate held petitioner to answer for all remaining counts and enhancements, with one exception: The magistrate found there was not sufficient evidence that petitioner had shot at an inhabited dwelling (Pen. Code, § 246), and instead held petitioner to answer for shooting at an unoccupied vehicle (*id.*, § 247, subd. (b)).

The prosecutor later filed an information charging petitioner with (1) shooting at an inhabited dwelling (Pen. Code, § 246); (2) street terrorism (*id.*, § 186.22, subd. (a)); (3) conspiracy to commit vandalism (*id.*, §§ 182, subd. (a)(1), 594, subds. (a), (b)(1)); and (4) possession of a firearm by a minor (*id.*, § 12101, subd. (a)(1)). The information alleged the crimes (other than street terrorism) were committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by members of the gang. (*Id.*, § 186.22, subd. (b).) The information stated it was filed directly in the criminal court pursuant to Welfare and Institutions Code section 707, subdivision (d)(1) and (2).

Petitioner moved to dismiss the information on several grounds in the criminal court. Of relevance here, petitioner argued the magistrate erred by failing to transfer petitioner's case to the juvenile court immediately on finding insufficient evidence to hold petitioner over on any crime for which he could be tried in the criminal court pursuant to Welfare and Institutions Code section 707, subdivision (d). The criminal court denied the motion to dismiss.

### Discussion

A. *Standard of Review, Summary of Applicable Statutes, and Procedural History*

■ The interpretation of a statute is subject to de novo review on appeal. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54]; *In re Damien V.* (2008) 163 Cal.App.4th 16, 20 [77 Cal.Rptr.3d 107].) In interpreting a statute enacted by means of a voter initiative, " ' "we turn first to the language of the statute, giving the words their ordinary meaning." ' " (*Robert L. v. Superior*

*Court* (2003) 30 Cal.4th 894, 900–901 [135 Cal.Rptr.2d 30, 69 P.3d 951].) Statutory language must be " 'construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent].' " (*Id.* at p. 901.) If the language of the statute is ambiguous, " ' "we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation.]' [Citation.]" (*Ibid.*)

█ As a general rule, persons under 18 years old who violate the criminal law are within the jurisdiction of the juvenile court, and are not prosecuted in the criminal court. (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 548 [117 Cal.Rptr.2d 168, 41 P.3d 3].) Certain statutes, however, allow minors to be prosecuted in the criminal court if they are determined to be unfit for treatment under the juvenile court law, or are accused of having committed certain serious crimes. (*Ibid.*)

Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998, broadened the circumstances under which minors 14 years of age and older could be prosecuted in the criminal court, rather than in the juvenile court. (*Manduley v. Superior Court, supra*, 27 Cal.4th at p. 549.)[1] Welfare and Institutions Code section 707, subdivision (d), which was amended by Proposition 21, authorizes prosecutors to file cases against minors directly in the criminal court without a finding of unfitness, under certain circumstances. As relevant to this case, Welfare and Institutions Code section 707, subdivision (d)(2) reads as follows: "[T]he district attorney or other appropriate prosecuting officer may file an accusatory pleading against a minor 14 years of age or older in a court of criminal jurisdiction in any case in which any one or more of the following circumstances apply: [¶] (A) The minor is alleged to have committed an offense that if committed by an adult would be punishable by death or imprisonment in the state prison for life. [¶] . . . [¶] (C) The minor is alleged to have committed an offense listed in subdivision (b) in which any one or more of the following circumstances apply: [¶] . . . [¶] (ii) The offense was committed for the benefit of, at the direction

---

[1] As explained by our Supreme Court in *Manduley v. Superior Court, supra*, 27 Cal.4th 537, references to the criminal court and the juvenile court in Welfare and Institutions Code section 707 are references to different divisions of the superior court. "The juvenile court and the criminal court are divisions of the superior court, which has subject matter jurisdiction over criminal matters and civil matters, including juvenile proceedings. [Citation.] When exercising the jurisdiction conferred by the juvenile court law, the superior court is designated as the juvenile court. [Citation.] Accordingly, when we refer herein to the jurisdiction of the juvenile court or the jurisdiction of the criminal court, we do not refer to subject matter jurisdiction, but rather to the statutory authority of the particular division of the superior court, in a given case, to proceed under the juvenile court law or the law generally applicable in criminal actions. [Citation.]" (*Manduley v. Superior Court, supra*, 27 Cal.4th at p. 548, fn. 3.)

of, or in association with any criminal street gang, as defined in subdivision (f) of Section 186.22 of the Penal Code, with the specific intent to promote, further, or assist in criminal conduct by gang members."

The felony complaint charged petitioner with attempted willful, premeditated, and deliberate murder, a crime punishable by life imprisonment with the possibility of parole. (Pen. Code, § 664, subd. (a).) The complaint also charged petitioner with shooting at an inhabited dwelling (which is listed in Welf. & Inst. Code, § 707, subd. (b)), and alleged that crime was committed for the benefit of, at the direction of, or in association with a criminal street gang, with the intent to promote, further, or assist criminal conduct by gang members. These charges permitted the district attorney to file the case against petitioner directly in the criminal court. (Welf. & Inst. Code, § 707, subd. (d)(2).)

At the commencement of the preliminary hearing, the prosecutor moved to dismiss the attempted murder charge, and after the preliminary hearing, the magistrate did not hold petitioner to answer for shooting at an inhabited dwelling. Therefore, at the conclusion of the preliminary hearing, petitioner was not held to answer to any charge that would permit the case to be filed directly in the criminal court, rather than in the juvenile court.

B. *Analysis of Statutory Requirements Under Welfare and Institutions Code Section 707, Subdivision (d)(2)*

 What is the next procedural step after the preliminary hearing at which a minor is not held to answer for any crime for which direct filing under Welfare and Institutions Code section 707, subdivision (d)(2) is permitted? Petitioner contends the magistrate was required to immediately transfer the case to the juvenile court. The district attorney disagrees, and contends he had the right, before any transfer to the juvenile court, to seek review of the magistrate's findings in the criminal court.

We hold that the prosecutor may seek review of the magistrate's findings in the criminal court by filing an information before the case is transferred to the juvenile court. As we explain, our holding is based on subdivision (d)(4) of Welfare and Institutions Code section 707, the magistrate's limited role and jurisdiction in conducting a preliminary hearing, and the text and intent of Proposition 21.

In support of their respective contentions, both parties rely on Welfare and Institutions Code section 707, subdivision (d)(4), which reads as follows: "In any case in which the district attorney or other appropriate prosecuting officer has filed an accusatory pleading against a minor in a court of criminal

jurisdiction pursuant to this subdivision, the case shall then proceed according to the laws applicable to a criminal case. In conjunction with the preliminary hearing as provided in Section 738 of the Penal Code, the magistrate shall make a finding that reasonable cause exists to believe that the minor comes within this subdivision. If reasonable cause is not established, the criminal court shall transfer the case to the juvenile court having jurisdiction over the matter."

■ In the case of an adult, if the magistrate holds the defendant not to answer on a charge alleged in the felony complaint, the district attorney may file an information alleging that same charge, so long as evidence supporting that charge is adduced at the preliminary hearing. (Pen. Code, § 739; *People v. McKee* (1968) 267 Cal.App.2d 509, 514 [73 Cal.Rptr. 112].) The defendant then has the right to challenge the information by a motion to dismiss. (Pen. Code, § 995; *Jones v. Superior Court* (1971) 4 Cal.3d 660, 664–665 [94 Cal.Rptr. 289, 483 P.2d 1241].)

Petitioner argues Welfare and Institutions Code section 707, subdivision (d)(4) requires the abandonment of this step-by-step process when a minor is charged in a case directly filed in the criminal court. But subdivision (d)(4) of section 707 specifically provides that when the "prosecuting officer has filed an accusatory pleading against a minor in a court of criminal jurisdiction pursuant to this subdivision, the case shall then proceed according to the laws applicable to a criminal case." This sentence in subdivision (d)(4) strongly supports the district attorney's argument that minors should be treated the same as adults insofar as their cases should proceed according to the laws applicable in criminal cases.

The magistrate's statutory role in conducting the preliminary hearing also supports our conclusion that the criminal court must consider whether to transfer the case to the juvenile court. Upon making the holding order, the magistrate loses jurisdiction over the case (*People v. Silva* (1995) 36 Cal.App.4th 231, 234 [43 Cal.Rptr.2d 8]), and cannot transfer the case to the juvenile court.

Although all judges of the superior court, the Courts of Appeal, and the Supreme Court are magistrates (Pen. Code, § 808), "[m]agistrates presiding at preliminary hearings do not sit as judges of courts, and exercise none of the powers of judges in court proceedings. . . . The office is purely a statutory one and the powers and duties of the functionary are solely those given by the statute; and those powers are precisely the same whether exercised by virtue of one office or that of another." (*People v. Newton* (1963) 222 Cal.App.2d 187, 189 [34 Cal.Rptr. 888].) "The magistrate serves a function different from the function of the trial judge. While the magistrate makes a

determination of probable cause in connection with a preliminary hearing [citation], the trial judge may review the magistrate's finding of probable cause and reverse it [citation]. [¶] Even though the voters and Legislature have made it possible for judges to serve in either role, the roles are still distinct and take place at different levels—that is, the magistrate makes determinations reviewable by the trial judge. When we undertake review of a case, we are reviewing the actions of the trial judge who had the ability to review the findings of the magistrate. [Citation.]" *(People v. Hart* (1999) 74 Cal.App.4th 479, 485–486 [86 Cal.Rptr.2d 762]; see *People v. Hoffman* (2001) 88 Cal.App.4th 1, 2–3 [105 Cal.Rptr.2d 372] [despite court unification, the defendant waives the right to challenge the magistrate's ruling on the defendant's suppression motion at the preliminary hearing if the defendant does not renew the motion at trial].)

■ Welfare and Institutions Code section 707, subdivision (d)(4) does not suggest that an immediate transfer to the juvenile court is required without review when the magistrate conducts the preliminary hearing as part of his or her statutory authority; rather, the act of transferring the case to the juvenile court is accomplished by the criminal court judge. In considering whether to transfer a case to the juvenile court, the criminal court may analyze the bases for the magistrate's finding or failure to find reasonable cause to believe the minor comes within section 707, subdivision (d).

In our de novo review, we next consider the text of Proposition 21 itself, and our conclusion finds support there, too. Among the findings and declarations of Proposition 21 are the following: "(f) Data regarding violent juvenile offenders must be available to the adult criminal justice system if recidivism by criminals is to be addressed adequately. [¶] (g) Holding juvenile proceedings in secret denies victims of crime the opportunity to attend and be heard at such proceedings, helps juvenile offenders to avoid accountability for their actions, and shields juvenile proceedings from public scrutiny and accountability. [¶] (h) Gang-related crimes pose a unique threat to the public because of gang members' organization and solidarity. Gang-related felonies should result in severe penalties. Life without the possibility of parole or death should be available for murderers who kill as part of any gang-related activity. [¶] (i) The rehabilitative/treatment juvenile court philosophy was adopted at a time when most juvenile crime consisted of petty offenses. The juvenile justice system is not well-equipped to adequately protect the public from violent and repeat serious juvenile offenders. [¶] (j) Juvenile court resources are spent disproportionately on violent offenders with little chance to be rehabilitated. If California is going to avoid the predicted wave of juvenile crime in the next decade, greater resources, attention, and accountability must be focused on less serious offenders, such as burglars, car

thieves, and first time non-violent felons who have potential for rehabilitation. This act must form part of a comprehensive juvenile justice reform package which incorporates major commitments to already commenced 'at-risk' youth early intervention programs and expanded informal juvenile court alternatives for low-level offenders. These efforts, which emphasize rehabilitative protocols over incarceration, must be expanded as well under the provisions of this act, which requires first time, non-violent juvenile felons to appear in court, admit guilt for their offenses, and be held accountable, but also be given a non-custodial opportunity to demonstrate through good conduct and compliance with a court-monitored treatment and supervision program that the record of the juvenile's offense should justly be expunged. [¶] (k) Dramatic changes are needed in the way we treat juvenile criminals, criminal street gangs, and the confidentiality of the juvenile records of violent offenders if we are to avoid the predicted, unprecedented surge in juvenile and gang violence. Californians deserve to live without fear of violent crime and to enjoy safe neighborhoods, parks, and schools. This act addresses each of these issues with the goal of creating a safer California, for ourselves and our children, in the Twenty-First Century." (Voter Information Guide, Primary Elec. (Mar. 7, 2000) text of Prop. 21, § 2, subds. (f)–(k), p. 119.)

The intent of the voters in enacting Proposition 21 was, in part, to remove some minors from the juvenile justice system and to try their cases in the criminal court system instead. The interpretation of Welfare and Institutions Code section 707, subdivision (d)(4) advanced by the district attorney satisfies that intent.

Finally, in support of his argument, petitioner cites the Implementation Guidelines for Proposition 21, circulated by the California District Attorneys Association the day after the initiative was passed by the electorate. With regard to Welfare and Institutions Code section 707, subdivision (d)(4), the guidelines contain the following information: "At the time of the preliminary hearing in any case 'direct filed' pursuant to 707(d), magistrate must make finding that reasonable cause exists to believe minor comes within provisions of 707(d). If not, case transferred to juvenile court." First, the guidelines are not authoritative or binding as precedent on the courts. Second, even if the guidelines had some authority, we do not read them to mean that *immediate* transfer of a matter to the juvenile court is appropriate without affording the district attorney the opportunity to challenge a magistrate's refusal to hold the petitioner to answer on certain charges. Instead, the guidelines can reasonably be read to support the district attorney's position that transfer to the juvenile court occurs only after the magistrate's failure to make a reasonable cause finding is challenged by the prosecutor and ruled on by the criminal court. As explained, *ante*, this interpretation finds strong support in the statute itself.

## Disposition

The petition is denied. This court's previously issued stay order is dissolved.

Rylaarsdam, Acting P. J., and Ikola, J., concurred.

Petitioner's petition for review by the Supreme Court was denied April 15, 2009, S170529. Kennard, J., and Moreno, J., were of the opinion that the petition should be granted.