[No. G045057. Fourth Dist., Div. Three. Aug. 24, 2012.]

FILLPOINT, LLC, Plaintiff and Appellant, v.
MICHAEL MAAS et al., Defendants and Respondents.

1172

**COUNSEL**

Morris Polich & Purdy, Jens B. Koepke; Leader & Gorham, Gary J. Gorham, Jon M. Leader and Eric Ashton Puritsky for Plaintiff and Appellant.

Gartenberg Gelfand Hayton & Selden, Edward Gartenberg, Shirley Hayton and Carolyn Pearson for Defendants and Respondents.

OPINION

FYBEL, J.—

INTRODUCTION

When Michael Maas sold his stock in Crave Entertainment Group, Inc. (Crave), to Handleman Company (Handleman), he signed a stock purchase agreement, which contained a three-year covenant not to compete. As part of Handleman's acquisition of Crave, Maas—a Crave employee—also signed an employment agreement containing a one-year covenant not to compete, which would become operative when Maas's employment with Crave was terminated. Maas resigned from Crave three years after its acquisition by Handleman. About six months later, he began working for Solutions 2 Go, Inc., a competitor of Crave, owned by Nima Taghavi.

Fillpoint, LLC (Fillpoint), which had acquired Crave from Handleman, sued Maas for breaching his employment agreement, and also sued Solutions 2 Go and Taghavi for interference with contract. (Maas, Solutions 2 Go, and Taghavi will be referred to collectively as defendants.) The trial court granted defendants' nonsuit motion; we affirm.

Under the general rule in California, covenants not to compete are unenforceable. To protect an acquired business's goodwill, an exception to this rule allows such covenants in connection with the sale of a business. This exception, however, is limited. In this case, the three-year covenant not to compete in the stock purchase agreement was designed to protect the goodwill of the business being sold. Handleman and its successor in interest, Fillpoint, received the full benefit of that covenant for three years following Handleman's acquisition of Maas's Crave stock. The covenant Fillpoint seeks to enforce in this litigation is a separate noncompetition and nonsolicitation covenant in the employment agreement, which could only be triggered when Maas left Crave's employ.

We agree with Fillpoint that the stock purchase agreement and the employment agreement are part of a single transaction and must be read together. When a purchase agreement and an employment agreement are entered into at the same time or roughly the same time, as part of a single transaction, and the two different agreements contain different covenants not to compete, the agreements must be read together. In this case, when we read the two noncompetition covenants together, we hold that the noncompetition and nonsolicitation covenant contained in the employment agreement is void and unenforceable under California law. For the reasons we discuss, that covenant does not fit within the limited exception to California's prohibition against covenants not to compete.

### Statement of Facts and Procedural History

Maas was employed by Star Video Games, and owned stock in Star Video Games's parent company, Crave. In 2005, Handleman acquired Crave. Maas and the other Crave stockholders, including Taghavi, entered into a securities purchase agreement with Handleman, dated October 18, 2005 (the purchase agreement). The purchase agreement included a covenant not to compete that prohibited Maas, as well as the other former Crave stockholders, from engaging in the business of distribution and publishing of video games for 36 months after the closing date.[1] In the purchase agreement, Crave agreed to ensure that Maas, Taghavi, and other employees would execute employment agreements at closing. The purchase agreement contained an integration clause that made the blank form employment agreement a part of the purchase agreement. The blank form employment agreement was an exhibit to the purchase agreement.

About a month after the purchase agreement was signed, on November 22, 2005, Maas entered into an employment agreement with Crave by which he agreed to work for Crave for three years (the employment agreement). The employment agreement also included a covenant not to compete or solicit. The period of the noncompete provision in the employment agreement was for one year after the expiration of the employment agreement or after the earlier termination of Maas's employment.[2] The employment agreement contained an integration clause which provided as follows: "This Agreement

---

[1] The covenant not to compete in the purchase agreement provided: "For a period ending 36 months after the Closing Date, none of the Major Shareholders shall, either directly or indirectly, (1) engage in the Business, other than on behalf of the Company, or (2) undertake any efforts or activities toward pre-incorporating, incorporating, financing, commencing or continuing any business that, if conducted by any of the Shareholders, would be a violation of clause (1), including, without limitation, engaging in the Business through [a competing business], or (3) advise, serve or consult with any person or entity which is, or, to the Major Shareholders' knowledge, will be undertaking efforts towards, incorporating, financing, commencing or continuing any Competing Business or activity which engages in a Competing Business." The purchase agreement defined "Business" as follows: "The Company is a distributor and publisher of interactive entertainment (videogames) software, hardware and accessories and provides videogame software, hardware and accessories category management services for certain game retailers (the 'Business')."

[2] The employment agreement's covenant not to compete or solicit provided: "For a period of one (1) year after the expiration of the Agreement, or earlier termination of Employee's employment for any reason, Employee will not[] engage in any action that Employee knows, or should have known upon reasonable inquiry, violates any of the following provisions: [¶] (i) solicit or otherwise contact, either directly or indirectly, for purposes of selling or otherwise promoting any product or service competitive with any product or service sold or actively in development by the Company at the time of the termination of the Agreement, or sell any such product or service to any person, firm, association, or corporation: [¶] (A) to which the Company sold any product or service during the twenty-four (24) months immediately preceding the termination of this Agreement; or [¶] (B) which Employee solicited, contacted or

and the Securities Purchase Agreement among Handleman Company and the Shareholders, Option Holders and Warrant Holders of Crave Entertainment Group, Inc. dated October 18, 2005 constitute the sole and entire agreements between the parties. [¶] Any prior agreement, promises, and negotiations not expressly set forth in this Agreement are of no force and effect whatsoever. [¶] To the extent there exists any conflict between this Agreement and the Securit[ies] Purchase Agreement, the Securit[ies] Purchase Agreement shall prevail."

Taghavi resigned from Crave in December 2006. Maas resigned from Crave effective November 22, 2008, after satisfying the three-year covenant not to compete contained in the purchase agreement, and fulfilling the three-year term of the employment agreement.

In February 2009, Fillpoint acquired Crave's assets. In April 2009, Crave executed an assignment of the employment agreement to Fillpoint.

In June 2009, Maas became the president and chief executive officer and a shareholder of Solutions 2 Go, a company owned by Taghavi. On appeal, the parties do not dispute that Solutions 2 Go is a competitor of Crave.

Fillpoint sued Maas for breach of the employment agreement, and sued Taghavi and Solutions 2 Go for tortious interference with the employment agreement; defendants asserted, among other defenses, the unenforceability of the noncompetition/nonsolicitation covenant in the employment agreement.[3]

Following Fillpoint's opening statement at trial, counsel for defendants moved for nonsuit. The court invited argument on certain issues, including

otherwise dealt with on behalf of the Company during the twenty-four (24) months immediately preceding the termination of this Agreement; [¶] (ii) make any such sale either for the benefit of him or for the benefit of any other person, firm, association, or corporation; [¶] (iii) in any manner, directly or indirectly, assist any person, firm, association, or corporation to make any such contact, solicitation, or sale; [¶] (iv) participate, engage, or have an interest in, directly or indirectly, whether as director, officer, employee, advisor, consultant, stock broker, partner, joint venture, owner, agent, or in any other capacity, in any business, in whole or in part, in the nature of or competitive with the business of the Company in any county in which the Company does business at any time during the Term of this Agreement; or [¶] (v) directly or indirectly, employ or solicit for employment (by any person, firm, association, or corporation other than the Company), or engage in any manner any employee of the Company or consultant to the Company (including any person who was, in the six (6) months prior to such employment or solicitation, an employee of the Company), without the prior written consent of the Company, except as provided for in the Securities Purchase Agreement among Handleman Company and the Shareholders, Option Holders and Warrant Holders of Crave Entertainment Group, Inc. dated October 18, 2005."

[3] Fillpoint also sued other Solutions 2 Go employees, and asserted other claims against Maas and others. The other defendants and other claims were removed from the complaint through motions or through Fillpoint's voluntary dismissal. Those claims will not be further discussed herein.

the enforceability of the covenant not to compete or solicit. A written motion for nonsuit and an opposition were later filed. The trial court granted the nonsuit motion, finding the covenants not to compete in the purchase agreement and in the employment agreement were separate; the covenant not to compete or solicit in the employment agreement was unenforceable under Business and Professions Code section 16600; and the covenant not to compete or solicit in the employment agreement could be assigned, meaning that Fillpoint could enforce it if it were enforceable. The court initially granted the nonsuit motion only as to the breach of contract cause of action. The court later determined that the interference cause of action must also be dismissed, because it was based on the covenant not to compete or solicit in the employment agreement, which the court had found to be unenforceable.

Judgment was entered, and Fillpoint filed a timely notice of appeal.

DISCUSSION

I.

STANDARDS OF REVIEW

■ "A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor. [Citation.] 'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give "to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor." ' [Citation.] A mere 'scintilla of evidence' does not create a conflict for the jury's resolution; 'there must be *substantial evidence* to create the necessary conflict.' [Citation.] [¶] In reviewing a grant of nonsuit, we are 'guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff.' [Citation.] We will not sustain the judgment ' "unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law." ' [Citation.]" (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291 [253 Cal.Rptr. 97, 763 P.2d 948].) We may not, however, consider the supporting evidence in isolation, and disregard any contradictory evidence; rather, we must review the entire record. (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1581 [47 Cal.Rptr.2d 752].)

We review the evidence in the light most favorable to the nonmoving party, resolve all conflicts and inferences in his or her favor, and determine de novo whether substantial evidence tends to support each element of the plaintiff's case. (*Nally v. Grace Community Church, supra,* 47 Cal.3d at p. 291.)

The interpretation of a written contract, where the evidence is not in dispute, is reviewed de novo (*People v. International Fidelity Ins. Co.* (2010) 185 Cal.App.4th 1391, 1395 [111 Cal.Rptr.3d 460]), as is the interpretation of a statute (*Solano v. Superior Court* (2009) 169 Cal.App.4th 1361, 1366 [87 Cal.Rptr.3d 448]).

II.

COVENANTS NOT TO COMPETE

Under California law, covenants not to compete are generally unenforceable: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." (Bus. & Prof. Code, § 16600.)

An exception to this rule is contained in Business and Professions Code section 16601, permitting the enforcement of covenants not to compete in connection with the sale of a business, as follows: "Any person who sells the goodwill of a business, or any owner of a business entity selling or otherwise disposing of all of his or her ownership interest in the business entity, or any owner of a business entity that sells (a) all or substantially all of its operating assets together with the goodwill of the business entity, (b) all or substantially all of the operating assets of a division or a subsidiary of the business entity together with the goodwill of that division or subsidiary, or (c) all of the ownership interest of any subsidiary, may agree with the buyer to refrain from carrying on a similar business within a specified geographic area in which the business so sold, or that of the business entity, division, or subsidiary has been carried on, so long as the buyer, or any person deriving title to the goodwill or ownership interest from the buyer, carries on a like business therein."[4]

The court in *Strategix, Ltd. v. Infocrossing West, Inc.* (2006) 142 Cal.App.4th 1068, 1072–1073 [48 Cal.Rptr.3d 614], explained the rationale and operation of Business and Professions Code section 16601 as follows: "Section 16601's exception serves an important commercial purpose by protecting the value of the business acquired by the buyer. 'In the case of the

---

[4] A similar limited exception applies when a partnership is dissolved or a partner dissociates from a partnership. (Bus. & Prof. Code, § 16602.) That exception is not involved in this case.

sale of the goodwill of a business it is "unfair" for the seller to engage in competition which diminishes the value of the asset he sold.' [Citation.] Thus, '[t]he thrust of . . . section 16601 is to permit the purchaser of a business to protect himself or itself against competition from the seller which competition would have the effect of reducing the value of the property right that was acquired.' [Citation.] 'One of the primary goals of section 16601 is to protect the buyer's interest in preserving the goodwill of the acquired corporation.' [Citation.]" The exception is limited: "[I]n order to uphold a covenant not to compete pursuant to section 16601, the contract for sale of the corporate shares may not circumvent California's deeply rooted public policy favoring open competition. *The transaction must clearly establish that it falls within this limited exception.*" (*Hill Medical Corp. v. Wycoff* (2001) 86 Cal.App.4th 895, 903 [103 Cal.Rptr.2d 779], italics added.)

### III.

#### THE PURCHASE AGREEMENT AND THE EMPLOYMENT AGREEMENT MUST BE READ TOGETHER.

Fillpoint argues that the purchase agreement and the employment agreement must be read together. We agree. "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." (Civ. Code, § 1642.) The parties have not cited us to any case with the same facts presented by this case, i.e., a purchase agreement and an employment agreement entered at roughly the same time as part of a single transaction, but containing different covenants not to compete. However, the holdings of a number of cases addressing covenants not to compete located in different and/or multiple documents lead us to the conclusion that under the facts of this case, the purchase agreement and the employment agreement are part of a single transaction, and must be read together.

In *Hilb, Rogal & Hamilton Ins. Services v. Robb* (1995) 33 Cal.App.4th 1812, 1816–1817 [39 Cal.Rptr.2d 887], Hilb, Rogal and Hamilton Company (HRH) acquired an insurance brokerage firm co-owned by Stanley Robb in September 1991. As part of the acquisition, Robb and HRH executed a merger agreement; the merger agreement did not contain a covenant not to compete, but required Robb to sign a separate employment contract. (*Id.* at p. 1817.) The employment contract contained a covenant not to compete that extended for three years after termination of Robb's employment with HRH; as compensation for the covenant not to compete, HRH paid Robb $52,500 in addition to the $245,000 in HRH stock that he received for the sale of the brokerage firm's assets. (*Id.* at pp. 1817–1818.) In February 1994, Robb quit his job with HRH and immediately started to work for a competitor. (*Id.* at

p. 1818.) HRH sued Robb for misappropriation of trade secrets and breach of the employment contract's covenant not to compete. (*Ibid.*) The trial court denied HRH's application for a preliminary injunction to enforce the covenant not to compete, on the ground HRH "was not likely to prevail in 'asserting the viability of the covenant.' The court noted that there were 'unanswered factual issues as to the intent of the parties in constructing the merger.' It also stated that the covenant might be invalid because it was contained in the employment contract, not in the merger agreement." (*Id.* at pp. 1818–1819.)

In affirming the trial court's order denying the application for a preliminary injunction, the appellate court held the trial court had not erred in its implicit finding that the interim harm to Robb if the application were granted outweighed the interim harm to HRH if it were not. (*Hilb, Rogal & Hamilton Ins. Services v. Robb, supra*, 33 Cal.App.4th at pp. 1822–1823.) Although the appellate court did not address the trial court's finding that HRH had failed to establish a likelihood of success on the merits, it nevertheless addressed certain legal issues to "clarify or narrow the issues for the trial court in any future proceedings." (*Id.* at p. 1823.)

In particular, the appellate court concluded the placement of the covenant not to compete in the employment contract, rather than the merger agreement, did not affect the covenant's enforceability under Business and Professions Code section 16601. "Business and Professions Code section 16601 provides that a shareholder of a corporation who sells or otherwise disposes of all of his shares 'may agree with the buyer to refrain from carrying on a similar business.' Robb argues that the agreement allowed by section 16601—the covenant not to compete—is void here because it is contained in the employment contract and not in the merger agreement. We refuse to read such a requirement into the statute. [¶] As permitted by Business and Professions Code section 16601, Robb agreed that after the merger, he would refrain from carrying on a business similar to the Agency. The validity of that covenant is not affected by its location in the employment contract rather than the merger agreement. Nothing in section 16601 requires that the covenant be contained in a particular type of document. The purpose of the statute is served as long as the covenant is executed in connection with the sale or disposition of all of the shareholder's stock in the acquired corporation. Section 16601 does not prescribe a format for a covenant not to compete, and we can find no reason to impose one. [¶] In this case, the merger proposal described how HRH would acquire the Agency and stated that Robb would have to 'enter [an] employment agreement[] with appropriate non-compete/non-piracy clauses.' Further, the merger agreement and the employment contract cross-referenced each other. Moreover, the merger proposal described the noncompetition covenant as a 'key requirement' of the transaction, leaving no doubt that the covenant was a necessary condition of

the merger. Finally, as part of the merger process, Robb was paid $52,500 solely for the noncompetition covenant. In light of these facts, the merger agreement and the employment contract should be construed together to effectuate the purpose of the covenant. [Citation.] [¶] . . . [¶] . . . Robb's employment contract (containing the covenant not to compete) and the merger agreement cross-referenced one another, indicating that Robb agreed to the covenant as part of the stock sale. Further, the written merger proposal . . . made clear that the covenant not to compete was a requirement of the merger. . . . [T]he documentary evidence before us establishes that Robb agreed to the noncompetition covenant in his capacity as a selling shareholder/employee, not solely as an employee. . . . [¶] In sum, Business and Professions Code sections 16600 and 16601 do not render the noncompetition covenant invalid simply because it appears in the employment contract and not in the merger agreement." (*Hilb, Rogal & Hamilton Ins. Services v. Robb, supra*, 33 Cal.App.4th at pp. 1825–1827, fns. omitted.)

We agree with the analysis of *Hilb, Rogal & Hamilton Ins. Services v. Robb*. The two noncompetition covenants in the agreements in this case are far different from the one noncompete covenant contained in the employment contract in *Hilb*, however. Here, the purchase agreement contained a noncompete provision protecting the goodwill of the business; the employment agreement contained an additional broad, noncompetition and nonsolicitation covenant, as discussed in part IV. of the Discussion, *post*.

In *Vacco Industries, Inc. v. Van Den Berg* (1992) 5 Cal.App.4th 34, 42–43 [6 Cal.Rptr.2d 602], Tony Van Den Berg entered into a stock purchase agreement, a separate noncompetition agreement, and an employment agreement. "Although these [noncompetition and employment] agreements were expressly motivated by and directly and integrally dependent upon the stock sale . . . , neither cross-referenced or referred to the other." (*Ibid.*) The appellate court concluded the noncompetition agreement was enforceable under Business and Professions Code section 16601. (*Vacco, supra*, at pp. 47–49.) "An examination of the employment agreement reflects that it also contained a 'noncompetition' commitment in the event of employment termination. However, we do not consider that agreement here. First, it was signed by Van Den Berg as *an employee* and differs in significant ways from the subsequent and clearly relevant noncompetition agreement signed by him *as a selling shareholder*; second, it is of questionable validity under Business and Professions Code section 16600; and finally, it was not argued by the parties and apparently was not considered by the trial court." (*Id.* at p. 43, fn. 4.) *Vacco* is of limited relevance, both because the three documents in question did not cross-reference each other (as do the purchase agreement and the employment agreement in our case), and because the trial court in *Vacco* did not address the covenant not to compete in the employment contract.

In *Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1294 [72 Cal.Rptr.3d 259], Alliant Insurance Services, Inc. (Alliant), purchased G. Scott Gaddy's insurance brokerage business for $4.1 million. Gaddy signed a stock purchase agreement and an employment agreement, both of which contained the same covenant not to compete. (*Id.* at pp. 1295–1297.) The covenant applied to the entire state of California, for a period of five years after the stock purchase closing date or two years after the termination of Gaddy's employment with the new company, whichever was later. (*Id.* at p. 1296.) Gaddy's employment was terminated, at which point he began soliciting business from Alliant's customers. (*Id.* at p. 1297.) Alliant sued Gaddy and sought a preliminary injunction preventing Gaddy from, among other things, carrying on a business in competition with Alliant anywhere in the State of California. (*Id.* at p. 1299.) The appellate court concluded Gaddy had failed to show the noncompetition covenant was unenforceable; rather, it was valid under Business and Professions Code section 16601. (159 Cal.App.4th at p. 1306.) Because the covenants not to compete in the two documents in *Alliant Ins. Services, Inc. v. Gaddy* were the same, the case does not help us address the different covenants in the purchase agreement and the employment agreement here.

In this case, both the purchase agreement and the employment agreement contained covenants not to compete, but those covenants were not identical. All selling shareholders, including Maas, agreed to a three-year noncompetition period in the purchase agreement. The noncompetition and nonsolicitation period in the employment agreement was for one year after the termination of Maas's employment. The two agreements were between the same parties; although the purchase agreement was between Handleman and Maas, and the employment agreement was between Crave and Maas, Crave was owned by Handleman after the acquisition. Both agreements referenced each other, and the employment agreement contained an integration clause providing that in the event of any conflicts between the terms of the two agreements, the terms of the purchase agreement would prevail. Based on these facts, we conclude the purchase agreement and the employment agreement must be read together as an integrated agreement.[5] The trial court erred in concluding the purchase agreement and the employment agreement must be read separately.

---

[5] In the trial court, Fillpoint offered extrinsic evidence it contends is consistent with the interpretation of an integrated purchase agreement and employment agreement; defendants do not address the evidence offered by Fillpoint, nor suggest this court should not consider it. The evidence, however, appears to reflect only inadmissible evidence of Handleman's subjective state of mind. Because the language of the operative agreements alone requires that they be read together as part of a single transaction, we need not, and do not, consider or rely on such extrinsic evidence offered by Fillpoint.

## IV.

*IS THE COVENANT NOT TO COMPETE IN THE EMPLOYMENT AGREEMENT
ENFORCEABLE? NO.*

The covenant not to compete in the purchase agreement expired in late 2008 and was fully satisfied. As all parties correctly agree, unless the additional covenant not to compete in the employment agreement satisfies the exception contained in Business and Professions Code section 16601, it is unenforceable under California law. Accordingly, the covenant in the employment agreement depends entirely on section 16601 for its survival.

To review, at this point in the analysis, we know the following: (1) the general rule in Business and Professions Code section 16600 prohibits covenants not to compete, except under two limited exceptions; (2) the exception contained in Business and Professions Code section 16601 protects covenants not to compete entered into in connection with the sale of the goodwill of a business; (3) the covenant not to compete in the employment agreement, standing alone, is unenforceable under section 16600; and (4) the three-year covenant not to compete in the purchase agreement protecting the goodwill acquired by Handleman has been satisfied.

Fillpoint contends that if the purchase agreement and the employment agreement are read together, it must follow that the employment agreement's covenant not to compete is a part of Handleman's acquisition of Crave's value, and enforceable and effective for one year after Maas's resignation from Crave. Does the fact that the purchase agreement and the employment agreement should be read together automatically mean the covenant not to compete in the employment agreement is enforceable? No. To conclude that the purchase agreement and the employment agreement should be read together begins, not ends, the analysis whether the covenant not to compete in the employment agreement is enforceable. We therefore next examine, compare, and analyze the terms of the covenants.

The purchase agreement's covenant not to compete prevented Maas from competing with Crave, setting up a business to compete with Crave, or assisting someone else to set up or continue a business in competition with Crave, during the three-year period after Handleman acquired Crave. This covenant protected the goodwill of Crave for three full years, served the purpose of Business and Professions Code section 16601, and was fully performed.

In contrast, the employment agreement's covenant not to compete was much broader and prevented Maas, for one year after the termination of his

employment, from (1) making sales contacts or making actual sales to anyone who was Crave's customer or potential customer during the two years preceding the termination of Maas's employment, or assisting others in doing so; (2) working for or owning an interest in any business that was in the same business as, or would compete with, Crave; or (3) employing or soliciting for employment any of Crave's employees or consultants. The covenant in the employment agreement affected Maas's rights to be employed in the future and, in this case, for a year after the end of the three-year period of the purchase agreement's covenant. In a concession that highlights the restriction on a former employee's rights, Fillpoint states, in its opening appellate brief, that the two covenants not to compete were intended "to deal with the different damage Maas might do wearing the separate hats of major shareholder and key employee."

Thus, by their very nature, the restrictions in the covenants not to compete in the purchase agreement and the employment agreement are different. The purchase agreement's covenant was focused on protecting the acquired goodwill for a limited period of time. The employment agreement's covenant targeted an employee's fundamental right to pursue his or her profession.

■ In addition, the nonsolicitation terms in the employment agreement are too broad and inconsistent with the purposes and terms of Business and Professions Code sections 16600 and 16601. The employment agreement even barred sales to or solicitation of potential customers. "[N]onsolicitation covenants barring the seller from soliciting *all* employees and customers of the buyer, even those who were not former employees or customers of the sold business, extend their anticompetitive reach beyond 'the business so sold.' [Citation.] They do more than ensure the buyer receives the full value of the business it bought, whose goodwill does not include ' "the patronage of the general public." ' [Citation.] The covenants would give the buyer broad protection against competition wherever it happens to have employees or customers, at the expense of the seller's fundamental right to compete for employees and customers in the marketplace. [Citation.]" (*Strategix, Ltd. v. Infocrossing West, Inc., supra*, 142 Cal.App.4th at p. 1073.)

■ Maas satisfied his covenant not to compete for three years under the purchase agreement. The employment agreement's covenant not to compete for an additional year, including its broad nonsolicitation agreement, cannot be reconciled with California's strong public policy permitting employees the right to pursue a lawful occupation of their own choice. Accordingly, we hold the employment agreement's covenant not to compete does not fit within the limited exception (contained in Bus. & Prof. Code, § 16601) to Business and Professions Code section 16600, and is not enforceable.

## Disposition

The judgment is affirmed. Respondents to recover their costs on appeal.

O'Leary, P. J., and Thompson, J., concurring.