Filed 10/9/13  Camberos v. Lewis CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LAURO CAMBEROS et al., | B230562 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. VC047977) |
| v. | |
| RAYMOND LEWIS et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County.  Michael A. Cowell, Judge.  Affirmed.

Hoffman & Osorio and Nathan V. Hoffman for Plaintiffs and Appellants.

Carlson & Messer, Jeffrey J. Carlson, Jeanne L. Zimmer and Stephen A. Watkins for Defendants and Respondents.

_____

This case arises from a multi-vehicle accident, which led to the death of 15-year-old Lauro Alberto Camberos (the decedent). The decedent's parents, Lauro and Sandra Camberos, and his estate (appellants) sued the Los Angeles Unified School District (LAUSD) and one of its school bus drivers (Raymond Lewis) (Lewis) (collectively respondents) for wrongful death. The trial court granted respondents' motion for nonsuit on the ground that appellants had no expert testimony on causation. We affirm. We also affirm the trial court's order denying respondents' motion for attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Accident

On July 20, 2006, the decedent was walking on a sidewalk on Gage Avenue in Huntington Park, California. A van driven by Jerry Lee Smith (Smith) westbound on Gage Avenue struck the rear of a car driven by Eduardo Bonilla (Bonilla). Smith's van continued westbound, striking another car driven by Iris Meija (Meija). Smith's van and Meija's car came to rest at a curb. Meanwhile, Bonilla's car crossed the center divider into opposing eastbound traffic lanes, striking a LAUSD school bus driven by Lewis in the eastbound number one lane. The bus crossed into opposing traffic, striking a sport utility vehicle (SUV), then went up the curb, striking the decedent and a wall. The decedent died of his injuries after being hospitalized.

The California Highway Patrol (CHP) investigated the accident and Sergeant Tai Vong prepared a 33-page traffic collision report, in which he concluded that Smith was the cause of the accident due to driving at an unsafe speed. Sergeant Vong recommended that the case be forwarded to the Los Angeles County District Attorney's Office for prosecution of Smith for vehicular manslaughter with gross negligence.

The CHP's Multi Accident Investigation Team (MAIT) also responded, and did extensive investigation and accident reconstruction. The MAIT prepared a physical evidence diagram and a dynamics diagram, reconstructing the collisions, and included more than 250 photographs of the scene and the vehicles involved. CHP Officer Paul Gray testified at his deposition and at trial about the investigation and preparation of the MAIT diagrams and accident reconstruction. He also provided all counsel with copies of

2

a security videotape from a liquor store across the street from the accident that caught a portion of the accident.   Appellants' counsel played the videotape at trial, which showed that the accident lasted less than two seconds.

**The Operative Complaint**

In the second amended complaint, appellants sued LAUSD and Lewis for wrongful death based on negligence.  Appellants also sued the other drivers, who are not parties to this appeal.

**Appellants' Expert Witness**

Appellants designated as their expert witness Augustine Zemba (Zemba) to testify as to "passenger transportation and the operation of school buses, and the standard of care while driving buses."  Appellants conceded that Zemba was not an expert on accident reconstruction.[1]  Respondents' motion in limine No. 9 sought to exclude Zemba's testimony based on speculation, lack of proper foundation, improper opinion, and lack of relevance.  The trial court granted the motion in part, ruling that Zemba could not testify as to whether Lewis was negligent.[2]

**Motion for Nonsuit**

Immediately following appellants' opening statement, respondents moved for nonsuit on the ground that appellants lacked expert testimony on causation.  The trial court took the matter under submission and permitted briefing on the issue.  In the meantime, the trial court heard three days of testimony by Officer Gray, Zemba, and Lewis's supervisor.  After holding a hearing on the motion for nonsuit, the trial court granted the motion.  The trial court explained:  "Everything your expert has said is predicated on one thing only, that is the statement by Mr. Lewis in his deposition that he believes he had 100 feet within which to react.  [¶]  . . .  [¶]  There's no other evidence that he's taken into consideration.  He didn't look at the reports, he didn't look at the time

---

[1]      Appellants initially designated their experts on April 12, 2010, but de-designated their accident reconstruction expert on May 20, 2010.

[2]      Appellants do not challenge this ruling.

frame, the time sequence of these things; he's assuming that this is gospel."  The trial court continued, "The fact that a man with so little . . . exposure to the circumstances of the case, without any examination of the vehicles that were involved . . . that he could presume to make a statement that somebody killed a boy because of his negligence; that's the basis of my opinion."[3]

**Motion for Attorney Fees**

Respondents subsequently moved for an award of attorney fees and costs in the amount of $331,210.16, which the trial court denied.

Appellants' appeal from the judgment and respondents' cross-appeal from the order denying their motion for attorney fees ensued.

## DISCUSSION

### I.  The Motion for Nonsuit

#### A.  *Standard of Review*

"'A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor.  [Citation.]  "In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses.  Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. . . ."  A mere "scintilla of evidence" does not create a conflict for the jury's resolution; "there must be *substantial evidence* to create the necessary conflict."  [Citation.].'"  (*Fillpoint, LLC v. Maas* (2012) 208 Cal.App.4th 1170, 1176, citing *Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291.)  A defendant may move for nonsuit after the plaintiff's opening statement.  (Code Civ. Proc., § 581c, subd. (a).)  "'In reviewing a grant of nonsuit, we are "guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff."  [Citation.]  We will not sustain the judgment '"unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions,

---

[3]     The trial court referred to Zemba as "a hack."

4

inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law.'" [Citation.]'" (*Fillpoint, LLC v. Maas, supra,* 208 Cal.App.4th at p. 1176.)

### B. *Improper Reliance on Abolished Doctrines*

The elements of negligence are (1) duty of care, (2) breach of that duty, (3) proximate cause, and (4) injury. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205; *John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1188.) The plaintiff must show that the defendant's actions were a substantial factor in causing injury. (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1049; *Viner v. Sweet* (2003) 30 Cal.4th 1232, 1239–1240.)

Appellants contend that they made a prima facie showing of negligence in their opening statement and by the testimony given at trial under the doctrines of "last clear chance" and "discovered peril." They argue that under these doctrines, causation is not an issue, but that in any event they established causation by Zemba's testimony. Specifically, they cite to Zemba's testimony that he had considered Lewis's deposition testimony, in which Lewis recalled seeing the accident developing and thinking of two ways to avoid it—by braking and moving to the number two lane—and Zemba's conclusion that a bus driver "should" move to the next lane if it is available.

Appellants spend much of their opening brief discussing "last clear chance" cases they claim are similar, and do so under different headings in their brief. The problem with appellants' arguments, though, is that the last clear chance doctrine was expressly abolished by our Supreme Court in favor of comparative negligence. (*Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, 829 (*Li*) ["The doctrine of last clear chance is abolished, . . . "].) As respondents note, commentators routinely refer to "last clear chance" and "discovered peril" interchangeably. (See Prosser, Law of Torts (3d ed. 1964) § 65, p. 439.) Indeed, there are no reported California decisions applying the "discovered peril" doctrine since *Li*.

Accordingly, appellants' contention that they made a prima facie showing of negligence based on these doctrines is without merit.

5

**C. *No Expert on Causation***

Appellants also contend that the trial court erred in requiring their standard of care expert to qualify as an expert on accident reconstruction. Putting aside appellants' continued reliance on last clear chance cases, which they claim do not require such an expert, they correctly note that expert witness testimony is necessary when "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a).) According to appellants, the only matter that was beyond the common experience of the jury was the standard of care for commercial bus drivers, for which Zemba was the designated expert.

We disagree. While Zemba's testimony may have been relevant to the scope of Lewis's duty as a school bus driver, it had nothing to do with the issue of causation, i.e., were Lewis's actions a proximate cause of the harm. At best, Zemba could testify that Lewis *should* have moved the bus into an empty traffic lane if available, without discussing other critical factors in a traffic accident, such as reaction time, perception time, distance, and the mechanics of the damage to the bus from the vehicle collisions. The accident in this case involved multi-vehicle chain reaction collisions and a complicated sequence of events and issues, including the nature of the severe damage to the bus from both the collision with Bonilla's car and the subsequent collision with the SUV, and how the resulting damage affected Lewis's operation of the bus. These issues are plainly beyond the common experience of judges and juries. (See *Visueta v. General Motors Corp.* (1991) 234 Cal.App.3d 1609, 1616 [truck driver, who was not an expert on automobile accident reconstruction, could not give a lay opinion as to the cause of the collision]; Haning, Flahavan & Kelly, Cal. Practice Guide: Personal Injury (The Rutter Group 2012), § 2:370, p. 2(i)-61 ["Expert testimony is also required on the issue of *causation* if the matter is so beyond lay experience that it can be explained *only* through experts"].)

"[W]here, as here, the complexity of the causation issue is beyond common experience, expert testimony is required to establish causation." (*Stephen v. Ford Motor Co.* (2005) 134 Cal.App.4th 1363, 1373.) Appellants, who had the burden of establishing

6

every element of their negligence claim, could not establish causation without an accident reconstruction expert in this complicated accident case.

Accordingly, the motion for nonsuit was properly granted. (*Stephen v. Ford Motor Co.*, *supra*, 134 Cal.App.4th 1363.)

### D. *No Violation of Rules Governing Nonsuits*

Finally, appellants contend that the trial court violated "various rules of nonsuits" by improperly weighing the evidence, failing to interpret the evidence favorably to them, and failing to indulge every legitimate inference in their favor. Appellants list eight instances of alleged violations. We have reviewed the record and find no error by the trial court. It is clear the court understood its role: "Part of your motion is that the court cannot evaluate defense evidence. You are right, I am not evaluating the defense evidence here. They made an offer of proof . . . what they intended to put up. It is not a question of [the] court evaluating the defense evidence, it's a question of the standard of whether you have established enough evidence to even get into the defense [evidence]." The trial court continued, "The defendant is entitled to a nonsuit if the trial court determines that it's a matter of law the evidence presented by plaintiff is [in]sufficient to permit a jury to find in his favor. It's not a question of whether I believe or disbelieve Mr. Zemba. I don't disbelieve him. . . . [¶] . . . [¶] But I find that there is no basis to justify the denial of the motion of a nonsuit as to LAUSD and Mr. Lewis."

## II. The Motion for Attorney Fees

Respondents brought a motion for an award of attorney fees and defense costs in the amount of $331,210.16 pursuant to Code of Civil Procedure section 1038 (section 1038), which the trial court denied.

Section 1038, subdivision (a) provides that "In any civil proceeding under the . . . Government Claims Act . . . the court, upon motion of the defendant or cross-defendant, shall, at the time of the granting of . . . any nonsuit dismissing the moving party . . . determine whether or not the plaintiff, petitioner, cross-complainant, or intervenor brought the proceeding with reasonable cause and in the good faith belief that there was a justifiable controversy under the facts and law which warranted the filing of

7

the complaint, petition, cross-complaint, or complaint in intervention.  If the court should determine that the proceeding was not brought in good faith and with reasonable cause, an additional issue shall be decided as to the defense costs reasonably and necessarily incurred by the party or parties opposing the proceeding, and the court shall render judgment in favor of that party in the amount of all reasonable and necessary defense costs, in addition to those costs normally awarded to the prevailing party."  Section 1038, subdivision (b) defines "defense costs" to include "reasonable attorneys' fees, expert witness fees, the expense of services of experts, advisers, and consultants in defense of the proceeding . . ."

"'Reasonable cause' is an objective standard which asks whether any reasonable attorney would have thought the claim tenable.  [Citation.]  'Thus, before denying a [Code of Civil Procedure] section 1038 motion, a court must find the plaintiff brought or maintained an action in the good faith belief in the action's justifiability and with objective reasonable cause.'  [Citation.]" (*Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 888.)  "The 'reasonable cause' prong is reviewed de novo, and the 'good faith' prong is reviewed for substantial evidence." (*Ibid*.)

At the outset, we note that while respondents' written motion for attorney fees is included in the record, appellants' written opposition is missing.  The trial court stated at the beginning of the lengthy hearing on the motion that it had read and considered the opposition filed by appellants.  Respondents have therefore failed to provide us with a complete record of the matter, in violation of well established appellate rules.  For this reason alone, we find the issue has been forfeited on appeal.  (See *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296 ["Because [defendants] failed to furnish an adequate record of the attorney fee proceedings, defendants' claim must be resolved against them"].)

In any event, respondents essentially take the position in their appellate brief that appellants lacked reasonable cause and good faith to maintain this action because they did not have an accident reconstruction expert and they ignored repeated requests to participate in settlement discussions.  In denying the motion, the trial court stated:  "The

8

problem that I have in this case is that I think it was—well, I'll say it quite frankly; I think inadequate representation by plaintiff's counsel. I think there's ineffective assistance of counsel here, that may come to the level of incompetence when it comes to bringing this type of a lawsuit without a solid accident reconstruction expert. [¶] . . . [¶] I disagree with [plaintiff's counsel's] representations . . . theor[ies]. But the fact remains that however tenuous—Mr. Lewis did testify [before trial] that he might have gone to the right-hand lane. You had another witness testify [before trial] that he [Lewis] did go into the right-hand lane briefly, whether it was before or after the [initial impact]. And you have Mr. Zemba, vague and unqualified expert though he is, testify to what was obvious from the video, which was that the right-hand lane was clear and open and it was possible for a bus to have gone into that lane had there been an opportunity to move into it. [¶] . . . [¶] But I do not think that ineffective assistance of counsel [or attorney malpractice] necessarily equates to bad faith." Neither do we.

## DISPOSITION

The judgment and order are affirmed. The parties to bear their own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, Acting P. J.
               ASHMANN-GERST

We concur:

_____, J.   _____, J.[*]
      CHAVEZ                         FERNS

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.