# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ASCENSION INSURANCE HOLDINGS, LLC, a Delaware limited liability company, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | C.A. No. 9897-VCG |
| | ) | |
| ROBERTS F. UNDERWOOD, an individual, and ALLIANT INSURANCE SERVICES, INC., a Delaware corporation, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: January 27, 2015
Date Decided: January 28, 2015

Barry M. Willoughby, Rolin Bissell, and Margaret M. DiBianca, of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; OF COUNSEL: Kaye E. Steinsapir, of BRYAN CAVE LLP, Santa Monica, California, *Attorneys for Plaintiff Ascension Insurance Holdings, LLC.*

Kathleen Furey McDonough, John A. Sensing, and Andrew H. Sauder, of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; OF COUNSEL: Debra L. Fischer, of MORGAN LEWIS & BOCKIUS LLP, Los Angeles, California; Seth M. Gerber, of MORGAN LEWIS & BOCKIUS LLP, Santa Monica, California, *Attorneys for Defendants Roberts F. Underwood and Alliant Insurance Services, Inc.*

GLASSCOCK, Vice Chancellor

This Memorandum Opinion addresses the Plaintiff's request for preliminary injunctive relief enjoining the Defendant Roberts F. Underwood and his current employer, Defendant Alliant Insurance Services, Inc., from breaching a covenant not to compete entered by Mr. Underwood in 2008 as part of an employee investment agreement (the "EIA"). There is no question that the covenant, if enforceable, would support the injunctive relief sought here. The Defendants argue strenuously, however, that the covenant is unenforceable as against the public policy of California, the state where the contract was entered.[1]

## I. BACKGROUND

I heard oral argument on the Plaintiff's Motion for a Preliminary Injunction on October 15, 2014. In a bench decision, I denied the Motion without prejudice and allowed the parties to engage in supplemental briefing addressing (1) whether the EIA was part of an asset sale, and (2) whether a 2011 employment agreement superseded the EIA. I heard oral argument on that supplemental briefing on January 21, 2015, after which the parties filed additional memoranda on the remedies sought. The background that follows is based on the facts gleaned from the limited record developed as described above.

Underwood participated in a sale of the assets of Paula Financial to the Plaintiff, Ascension Insurance Holdings, LLC (the "Parent" or the "Plaintiff") in

---

[1] The Plaintiff previously agreed that the grounds for its preliminary injunction rise and fall with the enforceability of the EIA.

2008.  That transaction was governed by an asset purchase agreement (the "APA").

In connection with the APA, Underwood entered into an accompanying employment agreement (the "Employment Agreement"), and pursuant to both contracts he agreed to refrain from engaging in the business of the Parent or its subsidiaries, including Underwood's former employer, Ascension Insurance Services, Inc., (the "Subsidiary"), for a period of five years.  Those contractual arrangements were entered into in January and February of 2008, and the covenants by which Underwood agreed not to compete for five years after the transaction closed—provisions that were contained in the APA and the Employment Agreement—have lapsed.  However, as part of the asset sale, the parties to that sale contemplated that a subsequent arrangement would be reached between Underwood and the Parent permitting Underwood to purchase an interest in the Parent.  That agreement, the EIA, was entered into in July 2008, some five or six months after the Employment Agreement and APA, respectively, were entered into and became effective.  As part of the EIA, Underwood agreed not to compete with the Parent or Subsidiary for a period of two years after leaving employment with the Subsidiary.  It is that provision which the Plaintiff seeks to specifically enforce here.

2

## II. STANDARD OF REVIEW

Under the well-known standard for a preliminary injunction, a plaintiff must demonstrate: (1) a reasonable probability of success on the merits; (2) that absent preliminary injunctive relief, it faces imminent and irreparable injury; and (3) that such harm outweighs the harm that may result from the injunction, should it prove to have been improvidently granted.[2]

## III. ANALYSIS

Unlike Delaware, California public policy disallows contractual agreements not to compete.[3] In other words, in California, a contracting party's right to freely be employed (and to compete thereby with the parties with whom he has contracted) trumps his freedom to contract. This is not a common-law prohibition; it is enshrined in statute.[4] There is, however, a narrow exception to that statutory prohibition against covenants not to compete; where a covenant not to compete is a part of a sale of equity (or assets) that includes goodwill, the parties may restrict

---

[2] *See C & J Energy Servs., Inc. v. City of Miami Gen. Employees*, 2014 WL 7243153, at *13 (Del. Dec. 19, 2014).

[3] *See, e.g.*, *Metro Traffic Control, Inc. v. Shadow Traffic Network,* 27 Cal. Rptr. 2d 573, 577 (Cal. Ct. App. 1994) ("California courts have consistently declared [Section 16600] an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice."); *Hill Med. Corp. v. Wycoff*, 103 Cal. Rptr. 2d 779, 784 (Cal. Ct. App. 2001) ("California has settled public policy in favor of open competition.").

[4] *See* Cal. Bus. & Prof. Code § 16600 ("Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.").

the seller from competing against the purchaser of the interest, to protect the value of the goodwill that the purchaser is acquiring.[5]

In the EIA, the parties agreed to both Delaware venue and Delaware choice of law. Delaware law respects the parties' right to freedom of contract, including with respect to reasonable covenants not to compete.[6] Delaware also follows the Restatement (Second) of Conflict of Laws (the "Restatement"), under which the parties' choice of law will generally control an agreement.[7] The Restatement recognizes an exception to that general principal, however: where the parties enter a contract which, absent a choice-of-law provision, would be governed by the law of a particular state (which I will call the "default state"), and the default state has a public policy under which a contractual provision would be limited or void, the Restatement recognizes that allowing the parties to contract around that public

---

[5] *See id.* § 16601 ("Any person who sells the goodwill of a business, or any owner of a business entity selling or otherwise disposing of all of his or her ownership interest in the business entity, or any owner of a business entity that sells (a) all or substantially all of its operating assets together with the goodwill of the business entity, (b) all or substantially all of the operating assets of a division or a subsidiary of the business entity together with the goodwill of that division or subsidiary, or (c) all of the ownership interest of any subsidiary, may agree with the buyer to refrain from carrying on a similar business within a specified geographic area in which the business so sold, or that of the business entity, division, or subsidiary has been carried on, so long as the buyer, or any person deriving title to the goodwill or ownership interest from the buyer, carries on a like business therein.").

[6] Under Delaware law, "[t]o be enforceable, a covenant not to compete must (1) meet general contract law requirements, (2) be reasonable in scope and duration, both geographically and temporally, (3) advance a legitimate economic interest of the party enforcing the covenant, and (4) survive a balance of the equities." *All Pro Maids, Inc. v. Layton*, 2004 WL 1878784 (Del. Ch. Aug. 9, 2004) *aff'd*, 880 A.2d 1047 (Del. 2005).

[7] *See, e.g.*, *Total Holdings USA, Inc. v. Curran Composites, Inc.*, 999 A.2d 873, 881–82 (Del. Ch. 2009); *Weil v. Morgan Stanley DW Inc.*, 877 A.2d 1024, 1032 & n.16 (Del. Ch. 2005) *aff'd*, 894 A.2d 407 (Del. 2005); *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1047 (Del. Ch. 2006).

4

policy would be an unwholesome exercise of freedom of contract.[8]  In other words, the Restatement is generally supportive of choice-of-law provisions, but recognizes that allowing parties to circumvent state policy-based contractual prohibitions through the promiscuous use of such provisions would eliminate the right of the default state to have control over enforceability of contracts concerning its citizens.

Here, the contract at issue—the EIA—was entered between a California resident and a Delaware limited liability company that has its principal place of business in California.  The EIA was negotiated in California[9] and involved an agreement not to compete that was limited almost completely to areas within California, by virtue of the geographic scope of the Plaintiff's business.[10] California is the state with the strongest contacts to the contract, and there is no question that, absent the contractual agreement of the parties to import Delaware law, California law would apply here.[11]  In such a case, the Restatement provides

---

[8] Section 187 of the Restatement provides that the chosen law will apply unless

> application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187 (1971).

[9] The Defendants assert that "the alleged claims arise out of acts which occurred exclusively in California," which presumably includes the negotiation, formation, and execution of the contract. *See* Defs.' Answering Supplemental Br. Opposing Pl.'s Mot. for a Preliminary Injunction at 7. The Plaintiff has not disputed this assertion.  I assume, for purposes of this preliminary injunctive relief analysis, that the contract was negotiated and entered in California.

[10] The Plaintiff seeks to enforce the covenant predominantly in California, but also in one county in each of Arizona and Nevada, as indicated in its proposed orders.

[11] *See* Restatement (Second) of Conflict of Laws § 188(2), which provides:

that I must determine whether enforcement of the covenant would conflict with a "fundamental policy" of California. If so, I must determine whether California has a materially greater interest in the issue—enforcement (or not) of the contract at hand—than Delaware. If both these questions are answered in the affirmative, California law will apply notwithstanding the choice-of-law provision in the EIA.

A. *The Covenant Not to Compete Would Be Void Under California Policy as Expressed by Statute*

The Plaintiff argues that the exception to California's public policy prohibiting covenants not to compete—an exception restricted to covenants not to compete in association with the purchase of assets and goodwill—applies here. It points out that Underwood sold his interest in Paula Financial, including a sale of goodwill, to the Plaintiff, and that at the time of that asset sale the parties contemplated that Underwood would be able to purchase an interest in the Plaintiff itself. The Plaintiff's factual assertion is bolstered by a side letter agreement, contemporaneous with the APA, indicating that the parties contemplated that they

---

In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
  (a) the place of contracting,
  (b) the place of negotiation of the contract,
  (c) the place of performance,
  (d) the location of the subject matter of the contract, and
  (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.

would reach an agreement whereby Underwood would purchase a $250,000 interest in the Plaintiff.[12] Accordingly, the Plaintiff argues, the EIA, which embodied this contemplated agreement, should be deemed a part of the purchase of assets by the Plaintiff, and its non-compete covenant preserved consistent with Section 16601.

The problem with the Plaintiff's argument is that even though Underwood's purchase of an interest in the Plaintiff, as provided for in the EIA, was contemplated at the time the parties entered into the APA, there was no discussion between the parties that a restriction on competition would be a part of that contemplated agreement. In fact, there *was* a covenant not to compete associated with the APA, both in the APA itself and restated in the 2008 Employment Agreement.[13] Those agreements prohibited Underwood from competing for a period of five years after the consummation of the APA and are precisely the type

---

[12] *See* Joint Appendix to Supplemental Opening Briefs ("Joint Appendix") at JA1179–80.

[13] *See id.* at JA1130–31 (APA § 7.5) ("The sale of the Purchased Assets represents a sale of substantially all of the assets of the Companies, along with all goodwill associated with the Business and the Companies, from Sellers to Buyer. In furtherance of the sale of the Purchased Assets to Buyer hereunder, and more effectively to protect the value and goodwill of the Purchased Assets and the Business, the Sellers covenant and agree that, for a period of five years from the Closing Date . . . neither the Sellers nor any of their respective Affiliates . . . shall, directly or indirectly . . . own, control, manage, operate, conduct, engage in, participate in, consult with, perform services for or otherwise carry on . . . a business competitive with the Business anywhere in any county in which the Business has been conducted by the Companies . . . ."). The APA also included a non-solicitation provision in that section. *See id.* at JA1131. The 2008 Employment Agreement, noting that its execution is a condition to closing the asset sale, binds Mr. Underwood for a "a period of five years following the Closing Date" from competing with "the Business" in California, or any other place where the sellers conducted business. *See id.* at JA1168 (2008 Employment Agreement § 8).

7

of agreement that is contemplated by the statutory exception of Section 16601. To the extent the EIA attempted to add additional restrictions on Underwood's right to compete, those clearly cannot have been relied on as part of the asset purchase because there was no contemporaneous agreement under which those restrictions could have been enforced. The non-compete portions of the EIA and its Delaware choice-of-law provision arose in a contract draft created by the Parent and first given to Mr. Underwood months after the APA and the Employment Agreement had been implemented. The evidence does not support a finding that the covenant not to compete found in the EIA was a negotiated part of the asset purchase; thus, it could not have been relied upon by the parties as security against competitive impairment by the seller of the goodwill and assets purchased, which is the sole ground upon which California relaxes its public policy prohibition against covenants not to compete.

On this point, both parties rely on *Fillpoint v. Maas* to support their arguments. In that case, the California Court of Appeals was presented with two agreements, both relating to the same sale of assets, and each containing a different covenant—one provided for a post-acquisition period for its non-compete, while the other provided for a post-employment period. The Plaintiff relies on this case to argue that "the fact that the APA and the EIA were not executed simultaneously

8

has no bearing on the enforceability of the Covenants here,"[14] because the California court ultimately held that the two agreements—though not executed simultaneously—must be read together. The Defendants, however, rely on this case for its holding that, even when read together, the post-employment covenant was void, while the post-acquisition covenant was valid under the Section 16601 exception. As the court noted, "To conclude that the purchase agreement and the employment agreement should be read together begins, not ends, the analysis whether the covenant not to compete in the employment agreement is enforceable."[15] Ultimately, the court concluded that, considering the terms of the different covenants,

> by their very nature, the restrictions in the covenants not to compete in the purchase agreement and the employment agreement are different. The purchase agreement's covenant was focused on protecting the acquired goodwill for a limited period of time. The employment agreement's covenant targeted an employee's fundamental right to pursue his or her profession.[16]

The former employee in that case had satisfied the post-acquisition covenant, and the court held that the post-employment covenant did not fall within Section 16601. Consequently, the court upheld the dismissal of the action for breach of that contract. Accordingly, *Fillpoint* provides no support for the Plaintiff's position here.

---

[14] Pl.'s Answering Br. as Supplemental Supp. of Mot. for Preliminary Injunction at 2.
[15] *Fillpoint, LLC v. Maas*, 146 Cal. Rptr. 3d 194, 203 (Cal. Ct. App. 2012).
[16] *Id.* at 204.

9

I find that, but for the choice-of-law provision, California law would apply to the EIA, and that the non-compete provisions of that agreement would violate a fundamental public policy of California. The sole remaining question, therefore, involves whether California's interest in vindicating its public policy is greater than Delaware's interest in enforcing the agreement.

*B. Balancing of the Interests*

The Plaintiff points out that Delaware is strongly contractarian in its law. This jurisdiction respects the right of parties to freely contract and to be able to rely on the enforceability of their agreements; where Delaware's law applies, with very limited exceptions, our courts will enforce the contractual scheme that the parties have arrived at through their own self-ordering, both in recognition of a right to self-order and to promote certainty of obligations and benefits. Upholding freedom of contract is a fundamental policy of this State.[17] The Plaintiff argues that Delaware's interest in this public policy—in favor of the sanctity of contracts freely entered into—is at least as great as California's interest in ensuring that its citizens are not burdened by covenants not to compete. In this regard, the Plaintiff cites as controlling a bench decision of this Court, *DGWL Investment Corp. v. Giannini*.[18] After careful consideration of that case, I find it is not controlling precedent here. *DGWL* admittedly involved a similar scenario, involving a

---

[17] *See NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009).
[18] C.A. No. 8647-VCP (Del. Ch. Sept. 19, 2013) (TRANSCRIPT).

10

defendant resident in California against whom the plaintiff sought to enforce a non-compete agreement that specified Delaware law as governing, but with an important difference from the facts here:  the Court in *DGWL* found that, in connection with the sale of his controlling interest in an LLC, the defendant had received $10 million both for that interest *and* for his agreement not to compete. Therefore, the *DGWL* Court found that the defendant was squarely within the Section 16601 exception to the prohibition against non-compete agreements, under California law.  In other words, unlike this case, the Defendant in *DGWL* entered a covenant not to compete in connection with the sale of goodwill to the Plaintiff, which is not against the public policy of California.[19]

The Court went on to say, in an alternative holding, that *even if* the contractual provision at issue was contrary to California law, this jurisdiction's interest in freedom of contract was not materially outweighed by the interest of California in restricting such a non-competition agreement.  That holding, obviously, was made in light of the facts of that case, which involved a sale of goodwill, a purchase price which represented not only the transfer of equity but the promise not to compete, and the re-domicile of the entity sold, from California to Delaware, as part of the asset purchase agreement.  In that context, even assuming the covenant not to compete did not come within California's statutory exception

---

[19] *See id.* at 9–10.

11

to the prohibition against such covenants, it would be so closely related to that exception, and so equitably compelling, that California's interest in promoting its public policy would be small, and insufficient to outweigh that of Delaware in enforcing the parties' contractual choices.

I cannot agree with the Plaintiff, however, that the teaching of *DGWL* is that Delaware's broad interest in freedom of contract will *always*, or even routinely, trump the default state's public policy. Here, where I find that California law would clearly prohibit the non-compete provision at issue on fundamental policy grounds, I find, too, that California's specific interest is materially greater than Delaware's general interest in the sanctity of a contract that has no relationship to this state. This case involves a contract between a corporation doing business in California and an employee residing in California, entered into in California and to be performed predominantly in California—not in Delaware.[20] The performance of the covenant not to compete in that agreement is against a clear public policy of California stated unequivocally by statute. Against this is a general interest of Delaware in freedom of contract. Without minimizing that significant interest, it seems to me that, where it is clear that the policy of the default state is that the contract at issue is abhorrent and void, and where, as here, the formation and

---

[20] The non-solicitation provisions of the EIA are, of course, geographically limited to where the Parent or Subsidiary conduct business. *See* Joint Appendix at JA1365–66 (EIA § 9(b)). One of the Plaintiff's proposed orders includes one county in each of Arizona and Nevada, as well as 14 counties in California.

12

enforcement of the contract relate overwhelmingly to the default state, a general interest in freedom of contract is unlikely to be the equal of that public policy under the Restatement analysis. The entire purpose of the Restatement analysis is to prevent parties from contracting around the law of the default state by importing the law of a more contractarian state, unless that second state also has a compelling interest in enforcement. In other words, in *every instance* where the parties seek to circumvent application of the law of the default state, the state whose law *was* chosen and is asked to enforce the contract will have the interest of protecting freedom to contract. It would be a tautology to suggest that such an interest alone, arising in every case, can trump the public interest of the default state, which, by definition, has the greatest contacts with the contract at issue; otherwise, the Restatement test would be meaningless, and the default state would lose its ability to constrain pernicious enforcement of contract rights.

As discussed above, I find that California law would otherwise apply to the EIA, that enforcement of the non-competition provisions of the EIA would violate a fundamental policy of California, and that California's interest in preventing the enforcement of a covenant not to compete against a California resident employed and seeking to compete largely in California—and not in Delaware—is greater than Delaware's general, though profound, interest in vindicating freedom of contract.

## IV. CONCLUSION

The ability to self-order is the sine qua non of free markets; without the ability to hold and dispose of property, and to agree to be bound contractually, no functional market could exist. Nonetheless, most if not all jurisdictions have determined as a matter of public policy that some contractual obligations are so pernicious that they must be removed from the self-ordering realm. To protect those policy interests, and for reasons of comity, states embracing the Restatement approach recognize that necessary to the right of a jurisdiction to limit contractual ordering for its citizens is a limitation on the ability of contracting parties to choose the law of a foreign jurisdiction which does not impose that limitation, and which itself has little or no interest in the enforcement of the contract at hand.

For the reasons set out above, I find that this is such a case; therefore, the Plaintiff has not demonstrated a reasonable likelihood that it would prevail upon the merits. Because such a showing is a prerequisite to the imposition of the extraordinary remedy of preliminary injunctive relief, I need not progress to the other two showings also necessary before the grant of such relief: irreparable harm and a favorable balance of equities. Similarly, I need not reach the Defendants' contention that a 2011 employment agreement between Underwood and the Subsidiary superseded the EIA, making the latter unenforceable. The Plaintiff's request for a preliminary injunction is, accordingly, denied. An appropriate order

14

is attached.  The parties should inform me what further proceedings are appropriate in this matter.

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| ASCENSION INSURANCE HOLDINGS, LLC, a Delaware limited liability company, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | C.A. No. 9897-VCG |
| | ) | |
| ROBERTS F. UNDERWOOD, an individual and ALLIANT INSURANCE SERVICES, INC., a Delaware corporation, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

AND NOW, this 28th day of January, 2015,

The Court having considered the Plaintiff's Motion for a Preliminary Injunction based on a purported breach of the 2008 Employee Investment Agreement, and for the reasons set forth in the Memorandum Opinion dated January 28, 2015, IT IS HEREBY ORDERED that the Plaintiff's Motion is DENIED.

SO ORDERED:

<u>/s/ Sam Glasscock III</u>

Vice Chancellor